Aurelio Valentino **LEBRON,**
Petitioner–Appellant,

v.

Louis F. **MANN,** Superintendent, Shawangunk Correctional Facility,
Respondent–Appellee.

No. 354, Docket 94–2184.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1994.

Decided Nov. 14, 1994.

Norman Trabulus, Mineola, NY, for petitioner-appellant.

Jane S. Meyers, Brooklyn, NY, Asst. Dist. Atty. Kings County (Charles J. Hynes, Dist. Atty. Kings County, Roseann B. MacKechnie, Asst. Dist. Atty., of counsel), for respondent-appellee.

Before: FEINBERG, PIERCE and MAHONEY, Circuit Judges.

FEINBERG, Circuit Judge:

Petitioner Aurelio Valentino Lebron appeals from a Memorandum and Order of the United States District Court for the Eastern District of New York, Jack B. Weinstein, J., denying Lebron's petition for a writ of habeas corpus. 844 F.Supp. 140. The petition is based on a theory of ineffective assistance of counsel that was not presented in state court on direct appeal. Because of procedural default under New York law, Lebron is barred from seeking federal review unless he can demonstrate that the asserted constitutional violation "has probably resulted in the conviction" of someone (Lebron) "who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The district court held that Lebron failed to meet that burden. We affirm for substantially the reasons stated in Judge Weinstein's opinion, reported at 844 F.Supp. 140.

## I. Facts and prior proceedings

On the evening of January 24, 1982, Johnny Lopez came to the apartment of Secundina Arvelo in Brooklyn, New York in search of petitioner Lebron. Arvelo, who was the common-law wife of Lebron, and her infant daughter were asleep when Lopez arrived, but eventually they were awakened by noises coming from the kitchen. Arvelo and her daughter went into the living room when they heard the noises. Although Arvelo could not see the two men, she testified at trial that she did hear talking. She said that she heard Lopez, whom she did not identify, say that he had shot a man with a shotgun some time back, that "he didn't care to kill or to die," that Lebron should "remember you have a wife and a daughter," and "something about money, owe him money." She also said that she heard Lebron say that Lopez "was putting things on him that he didn't do." Arvelo testified that she then heard a blast, after which Lebron told her to call the police. The shot that killed Lopez came from a sawed-off shotgun found near the body.

When the police arrived, Lebron admitted to having killed Lopez. As the prosecution pointed out in summation, Lebron did not say that he had acted in self-defense or that Lopez had attempted or threatened to use force against him. Lebron was charged with Murder in the Second Degree (N.Y.Penal Law § 125.25(1)) and Criminal Possession of a Weapon in the Second Degree (N.Y.Penal Law § 265.03).

Lebron was tried in December 1982 in New York State Supreme Court in Brooklyn. In addition to Arvelo's testimony, the prosecution's evidence revealed that Lopez had been armed with a hunting knife and a sawed-off shotgun, which were concealed under several layers of clothing. It was demonstrated that there was no reasonable possibility that Lopez could have brandished his weapons before Lebron shot. The prosecution also offered the testimony of Officer Michael Albanese, a ballistics expert, on the time and effort that would have been required to assemble and fire the gun that killed Lopez. Lebron did not testify on his own behalf and called no witnesses at trial.

In summation, the prosecution argued that Lebron had deliberately planned to kill Lopez. Trial counsel for Lebron countered that Lebron had acted in self-defense, responding

to a reasonably perceived threat that Lopez would use deadly force against him and his family. The court instructed the jury on second degree murder and second degree criminal possession as well as lesser included offenses. The court also instructed the jury on self-defense justification and the extreme emotional disturbance defense.

The jury returned a verdict of guilty of murder in the second degree. Lebron was sentenced in January 1983 to an indefinite prison term of 20 years to life.

In his appeal to the Appellate Division of the New York State Supreme Court, Lebron asserted two claims. First, he argued that the prosecutor's mischaracterizations of evidence during summation amounted to prosecutorial misconduct and deprived him of due process. Second, he argued that various missteps by trial counsel, principally a failure to seek suppression of an allegedly illegally obtained statement by Lebron while in custody and failure to object to statements by the prosecution during summation, deprived him of his Sixth Amendment right to effective assistance of counsel. The Appellate Division affirmed Lebron's conviction. *People v. Lebron,* 114 A.D.2d 859, 494 N.Y.S.2d 766 (2d Dep't 1985). The New York State Court of Appeals denied Lebron leave to appeal. 66 N.Y.2d 1041, 499 N.Y.S.2d 1038, 489 N.E.2d 1310 (1985).

In November 1990, Lebron filed the present petition for federal habeas relief under 28 U.S.C. § 2254. In a well reasoned opinion issued in March 1994, Judge Weinstein denied Lebron's petition. The court first addressed the claims of ineffective assistance of counsel that Lebron had raised in state court. The district court found that Lebron demonstrated neither objective unreasonableness of trial counsel's acts and omissions nor prejudice therefrom, as required by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court then addressed a theory of ineffective assistance that Lebron raised for the first time in his federal petition. Lebron maintains that trial counsel was ineffective in failing to assert that Lebron killed Lopez in a justifiable defense against attempted robbery. The district court regarded as "remote" the possibility that a jury would have acquitted Lebron had trial counsel asserted this theory. Accordingly, the court denied Lebron's petition but issued a certificate of probable cause for appeal to this court.

## II. Discussion

Lebron's appeal to us primarily concerns trial counsel's failure to assert the robbery self-defense justification. Under N.Y.Penal Law § 35.15(2)(a) a person is justified in using deadly force against another person if "[h]e reasonably believes that such other person is using or about to use deadly physical force" (regular self-defense). Lebron's trial counsel argued unsuccessfully that Lebron held such a reasonable belief when he shot Lopez. Present counsel maintains that, in light of evidence that Lopez could not possibly have brandished his weapons before Lebron shot, trial counsel's theory was doomed from the start. However, present counsel argues that under an alternative theory of justification, neglected by trial counsel, a jury would have acquitted Lebron. This alternative theory relies on N.Y.Penal Law § 35.15(2)(b), under which a person may use deadly physical force if "[h]e reasonably believes that such other person is committing or attempting to commit a . . . robbery" (robbery self-defense). While robbery by definition includes an element of force, N.Y.Penal Law § 160.00, that force need not be deadly force. See *People v. Woods,* 41 N.Y.2d 279, 283, 392 N.Y.S.2d 400, 360 N.E.2d 1082 (1977). Furthermore, under New York law, an attempt to take money by force, even under a good-faith claim of right, is robbery. *People v. Reid,* 69 N.Y.2d 469, 515 N.Y.S.2d 750, 508 N.E.2d 661 (1987). Thus, while a jury may have found beyond a reasonable doubt that Lebron did not fear that Lopez would use deadly force, there is a fair probability, according to present counsel, that a jury would have found that Lebron feared that Lopez would use some physical force to take property from him. In that event, counsel argues, the jury would have found that the robbery self-defense justification applied and would have acquitted Lebron.

## A. Exhaustion of state remedies

■ Normally, a district court may not grant a writ of habeas corpus to a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b); *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). If a state prisoner has failed to present his federal constitutional claim in state court and is procedurally barred from doing so when he applies for federal relief, then normally he is barred from federal relief too. *Engle v. Isaac,* 456 U.S. 107, 128–29, 102 S.Ct. 1558, 1571–73, 71 L.Ed.2d 783 (1982) (citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Two limited exceptions to the procedural default bar are available to habeas petitioners: First, a federal district court may excuse a procedural default if the petitioner demonstrates cause for not raising his federal constitutional claim in state court and actual prejudice from the alleged constitutional violation. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Second, a federal court may excuse a procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649.

Petitioner Lebron concedes that he is procedurally barred from raising his new theory of ineffective assistance of trial counsel in state court. A claim of ineffective assistance based on trial counsel's failure to assert the robbery self-defense justification could have been, but was not, presented to the Appellate Division. Therefore, that claim may not be reviewed collaterally in state court. N.Y.Crim.Proc. Law § 440.10(2)(c). Nor may it be reviewed in state court via reargument, McKinney's 1994 New York Rules of Court § 732.11, or by a new appeal to the New York Court of Appeals. *Id.* at § 500.10(a).

Furthermore, Lebron makes no allegation of cause for failure to raise the robbery self-defense issue on direct appeal. To obtain habeas relief, therefore, Lebron must overcome the heavy burden of demonstrating that he is "actually innocent." That is, as

Judge Weinstein pointed out, and Lebron agrees, Lebron must show "a fair probability that ... the trier of the facts would have entertained a reasonable doubt of his guilt." 844 F.Supp. at 144 (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986), in turn quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)). (For convenience, Lebron's burden in seeking the writ is frequently referred to hereafter as the actual innocence standard.)

## B. Actual innocence

■ The district court found, and we agree, that Lebron is unable to demonstrate actual innocence under the robbery self-defense justification. Lebron is correct in asserting that the robbery self-defense justification permits a person to respond with deadly force to threatened force that is not itself deadly. N.Y.Penal Law, § 35.15(2)(b). However, given that the prosecution rested its case on the theory that Lebron acted deliberately, it is entirely possible that the jury was persuaded that Lebron was not responding to threatened force at all. Furthermore, as the district court found, while the distinction between robbery self-defense and regular self-defense might make a difference in some cases, where as here the only force threatened (if any at all) happens to be deadly force, both justifications require the same ultimate finding of fact. 844 F.Supp. at 148. If a jury found beyond a reasonable doubt that Lebron did not fear the imminent use of deadly force by Lopez, then there is no persuasive reason to believe that it would find any differently if the robbery self-defense justification had been urged. We agree with the district court that Lebron's jury would not have been persuaded to acquit under a robbery self-defense theory where the record as a whole did not persuade it to acquit under a regular self-defense theory.

### 1. *Reversibility of conviction if claim had been raised on direct appeal*

Lebron argues that trial counsel's failure to raise the robbery self-defense justification would have been grounds for reversal of his

conviction had it been asserted on direct appeal and that, therefore, it also should be grounds for us to issue a writ of habeas corpus. This argument ignores the heavy burden facing a habeas petitioner, such as Lebron, who has procedurally defaulted on a claim.

The first part of Lebron's argument is that trial counsel's neglect of robbery self-defense would have caused a reversal by the Appellate Division. Lebron directs our attention to the decision of the Appellate Division in *People v. Flores*, 75 A.D.2d 649, 427 N.Y.S.2d 275 (2d Dep't 1980). There the Appellate Division reversed a judgment of conviction of first degree manslaughter and second degree criminal possession of a weapon and ordered a new trial because the trial court had instructed the jury on regular self-defense but not on robbery self-defense. The Appellate Division described that error as "critical and warrant[ing] review even in the absence of a request to charge or an exception taken at trial." *Id.*

From the brief memorandum opinion in *Flores* it appears that the only evidence of force was, as here, deadly force. The deceased threatened to shoot Flores if he refused to give him money. Nevertheless, the defendant in that case did not have to demonstrate on appeal, as Lebron must demonstrate here, a fair probability that he was actually innocent of the crimes with which he was charged. While the *Flores* court did find the trial court's error to have been "critical," nowhere did it suggest that Flores was actually innocent.

In the second part of his argument, Lebron states that the likelihood of reversal had the robbery self-defense claim been raised on direct appeal, as suggested by *Flores*, should compel us to issue a writ of habeas corpus. For this proposition, Lebron directs our attention to *Mayo v. Henderson*, 13 F.3d 528 (2d Cir.), *cert. denied*, ── U.S. ──, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). There we held that a state prisoner whose appellate counsel failed to raise a claim that had led to reversal of his co-defendant's conviction in the state court had not received effective assistance of appellate counsel.

Just as the *Flores* defendant did not have to overcome a burden as heavy as Lebron's in order to obtain a reversal in state court, so the *Mayo* petitioner did not have to overcome as heavy a burden in order to obtain a writ of habeas corpus in federal court. The underlying issue in *Mayo* was a prosecutor's failure, in clear violation of the requirement of *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, *cert. denied*, 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), to turn over to defense counsel police notebooks that turned out to be critical to conviction. On appeal, Mayo's counsel did not raise the *Rosario* issue, and the conviction was affirmed. Meanwhile, counsel for Mayo's co-defendant did raise the *Rosario* issue, and though his conviction was affirmed by the Appellate Division, it was reversed and a new trial ordered by the Court of Appeals. That court found a *Rosario* violation to be per se grounds for reversal. In view of this decision, Mayo sought collateral relief in state court, which was denied. Having exhausted his state court remedies, Mayo filed a petition in federal district court for a writ of habeas corpus, claiming ineffective assistance of appellate counsel. The district court granted the writ, and the state appealed to this court.

The *Mayo* petitioner did not have to face the same procedural default bar that Lebron must overcome. Applying *Strickland* to Mayo's claim of ineffective assistance of appellate counsel, we held first that it was unreasonable, in light of earlier indications that the highest state court would find the underlying error per se grounds for reversal, for appellate counsel to neglect a claim based on that error. 13 F.3d at 534. Second, we held that in light of the successful appeal of Mayo's co-defendant there was "at the very least a reasonable probability" that the error of appellate counsel was prejudicial. *Id.* at 536.

Our decision in *Mayo* does not significantly help Lebron. For reasons stated above, Lebron must demonstrate not merely prejudice but actual innocence in order to overcome the applicable procedural bar. Lebron argues that he demonstrates prejudice from trial counsel's error, as required by *Strick-*

*land,* and therefore "perforce" demonstrates actual innocence. Under present law, this argument is plainly incorrect. As the Supreme Court stated in *Sawyer v. Whitley:* "If a showing of actual innocence were reduced to actual prejudice, it would allow the evasion of the cause and prejudice standard...." — U.S. ——, —— n. 13, 112 S.Ct. 2514, 2522 n. 13, 120 L.Ed.2d 269 (1992).

Moreover, it is not even clear that Lebron is able to show simple prejudice from trial counsel's alleged error, let alone actual innocence. In *Mayo* we found that the petitioner had been prejudiced because his co-defendant, whose circumstances were identical to those of Mayo in all respects other than his argument on appeal, had received a reversal of his conviction on grounds neglected by Mayo's appellate counsel. Lebron does not have the benefit of such a comparison. See also *Mason v. Scully,* 16 F.3d 38 (2d Cir. 1994) (failure to object to hearsay was prejudicial where jury had been deadlocked and the only evidence it asked to review included the hearsay testimony).

On the record before us, we agree with Judge Weinstein that the possibility "that a different defense concept of the law would have changed the jury's view of the matter seems so remote as to require, under current law, dismissal of the [habeas] petition." 844 F.Supp. at 141.

### 2. *Prosecution's acknowledgement of attempted robbery*

Counsel for Lebron contends that a jury would have had to acquit Lebron if the court had instructed it on the robbery self-defense justification, because the prosecution "announced that its own evidence would show that Lopez had been trying to rob Lebron." Counsel refers to the prosecutor's opening statement at trial in which he said that Arvelo would testify that she heard Lopez tell Lebron, " 'You owe me money and you are going to pay.' " Counsel for Lebron also directs our attention to Arvelo's written and stenographically recorded statements as well as her grand jury testimony, which he claims corroborate that Lopez was attempting to rob Lebron.

Contrary to Lebron's contention, a robbery self-defense justification does not jump out of the prosecution's case. The prosecution's theory of the case was that Lebron acted with premeditated intent to murder Lopez. The prosecution supported this theory, for example, by extensive questioning of a ballistics expert, Officer Michael Albanese, who explained in detail the effort that Lebron would have had to make in order to assemble and fire his gun. While the prosecution conceded that Lebron and Lopez may have fought over money, it argued that the fight was irrelevant, as Lebron had planned to kill Lopez. If the jury believed beyond a reasonable doubt that Lebron acted with deliberate intent, then whether there was a fight over money was irrelevant.

The prosecution's acknowledgement that there may have been a fight over money does not help Lebron. To demonstrate that Lopez had attempted robbery, Lebron would have to show that Lopez had threatened him with physical force. Arvelo's statements indicate that the only force threatened was deadly force. Therefore, for a jury to acquit under a robbery self-defense justification it would have to "develop" the same "scenario," as Judge Weinstein put it, 844 F.Supp. at 148, that the actual jury refused to accept under the regular self-defense justification.

### 3. *Original ineffectiveness claims in light of new claim*

■ Lebron asserts at the outset of his brief that he is not appealing the district court's disposition of his original claims of ineffective assistance of counsel, that is, the claims presented to the Appellate Division. Nevertheless, later in his brief Lebron urges us to look at these claims in light of his new claim. He argues that as a result of the error asserted in his new claim "[the] entire trial strategy was skewed." For instance, the decision for Lebron not to take the stand acquires new significance when coupled with neglect of the robbery self-defense justification. We believe that this attempt to invest his original claims with new meaning renders the claims new, and therefore procedurally defaulted. Lebron cannot avoid the requirement to exhaust state remedies by asking us

to consider exhausted claims in light of a procedurally defaulted claim. As we stated in *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (in banc): "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." 696 F.2d 186, 191 (2d Cir.1982) (in banc). Since we conclude that Lebron's new claim is procedurally barred and fails to overcome the actual innocence hurdle, we decline to examine his original claims in light of the new claim.

### C. Was new claim preserved by prosecution's statement on direct appeal?

Finally, we address the argument of Lebron's counsel that his new claim, although not presented to the Appellate Division explicitly, was preserved for federal review by virtue of a statement that the prosecution made in its argument to the Appellate Division. The prosecution stated that trial counsel had been effective in "request[ing] ... instructions on the appropriate defenses." Lebron suggests that this statement was misleading, since trial counsel had not requested instructions on at least one critical defense (robbery self-defense). Having misled the Appellate Division in this way, Lebron argues, the prosecution implicitly raised the issue of whether the robbery self-defense justification was an "appropriate defense[ ]" and whether failure to pursue that defense amounted to ineffective assistance of counsel.

We find no authority for Lebron's assertion that the state should be estopped from raising the procedural default bar to Lebron's new claim due to a vague allusion to a potential claim in the state's argument on direct appeal. We agree with the district court, 844 F.Supp. at 147, that the prosecution's statement did not preserve Lebron's robbery self-defense claim.

### III. Conclusion

We agree with the district court that the alternative theory of self-defense that Lebron raised for the first time in federal court would not have affected the jury's verdict even if that theory had been asserted by trial counsel. Accordingly, we affirm the judgment of the district court denying Lebron's petition for a writ of habeas corpus. We commend counsel for both parties for their excellent briefs and arguments in this court.