Robert SIMMONS, Petitioner,

v.

Bert ROSS, Superintendent, Arthur Kill Correctional Facility, Respondent.

No. 95 Civil 9983 (JGK).

United States District Court,
S.D. New York.

May 19, 1997.

Robert Simmons, Arthur Kill Correctional Facility, Staten Island, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York by Christy L. Reuter, Assistant Attorney General, New York City, for Respondent.

### OPINION AND ORDER

KOELTL, District Judge.

The petitioner, Robert Simmons, who is currently incarcerated at Arthur Kill Correctional Facility, has filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his March 17, 1992 conviction for attempted robbery in the first degree.

### I.

The relevant facts for this petition are as follows. At Simmons' trial, Luis Cardona, the alleged victim of the attempted robbery, identified Simmons as the man who on September 13, 1991, approached him and asked him for change of a five dollar bill. (Trial Court Transcript ("Tr.") at 68–69). Cardona further testified that when he told Simmons that he did not have change, Simmons pulled a .38 caliber gun from the waistband of his pants, and ordered Cardona not to walk away from him. (Tr. at 68–70). Cardona testified that he ran away, rounded up a few of his co-

workers, chased Simmons, and pinned him down. (Tr. at 70–76). Soon thereafter, Simmons was apprehended by the police. (Tr. at 76–77). According to the testimony of one of the arresting officers, Simmons, upon his capture, stated that "If I had a gun why [ ] would I run." (Tr. at 174). Simmons made this statement before the officer told him that a gun had been involved in the crime.

Romere Sierra, who worked for Cardona and was with him the night that Cardona was allegedly accosted, also testified at Simmons' trial. Sierra testified that he was waiting for Cardona in Cardona's car when the alleged incident occurred. (Tr. at 139). Sierra testified that Cardona returned to the car and told him that someone had attempted to rob him. (*Id.*). Sierra further testified that he then looked out the car window and saw a man standing near their car. (Tr. at 139–40). Sierra identified Simmons as the man he saw that night. (Tr. at 142).

The jury also heard the testimony of Nestor Anavitate, another of Cardona's coworkers. Anavitate testified that after Simmons' arrest, Simmons had come to Cardona and Anavitate's job site. (Tr. at 158). In response to a question from the prosecutor about what he and Simmons had talked about, Anavitate said that he and Simmons had talked "[a]bout the case. His probation or something like that." (Tr. at 160.). The trial court struck the statement and told the jury to disregard it. (*Id.*). No curative instruction about this reference to Simmons' apparent criminal record was requested at that time. (*Id.*). Later in the trial, Simmons was asked by the court if he wished that a curative instruction concerning Anavitate's statement be given, but Simmons declined the court's offer. (Tr. at 186–87). Instead, Simmons sought a mistrial, which the Court denied. (Tr. at 187).

During the trial, pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), the court held a "*Sandoval*" hearing to determine which, if any, of Simmons' prior criminal convictions would be admissible should Simmons decide to take the stand in his own defense. (Tr. at 20–25). The court ruled that some but not all of Simmons' convictions would be admissible,

and limited the degree to which the prosecution could refer to the details of the admissible convictions. (Tr. at 23–24). The defense did not object to the judge's *Sandoval* ruling. (Tr. at 25). Simmons did not testify at his trial.

After his conviction on the charge of attempted robbery in the first degree, Simmons appealed to the Appellate Division, First Department. In his appeal, Simmons raised three issues: 1) that the court's refusal to charge the jury with a lesser included offense violated his right to due process; 2) that the court's *Sandoval* ruling denied him the right to a fair trial; and 3) that the prosecutor had improperly elicited information from Anavitate about Simmons' probation status. (Brief For Defendant–Appellant at i, attached as Exhibit A to Affidavit of Christy L. Reuter ("Reuter Aff.")).

Prior to a decision being issued by the Appellate Division, Simmons petitioned that court for permission to file a supplemental *pro se* brief. In that brief, Simmons sought to raise three additional grounds on appeal: 1) that the jury's verdict was against the weight of the evidence; 2) that his guilt had not been proven beyond a reasonable doubt; and 3) that the judge's instructions to the jury deprived him of a fair trial. (Affidavit in Support of Motion to File a Supplemental Brief on Appeal at ¶ 6, attached as Exhibit C to Reuter Aff.).

Prior to this supplemental brief being filed, Simmons wrote to his attorney, Dawn E. Scott, requesting that these additional arguments be included in his brief to the Appellate Division. (Simmons Letter, attached as Exhibit B to Petition). Scott responded in writing, setting forth the reasons that she believed that these arguments were without merit. (Dawn Scott Letter, attached as Appellant's Exhibit C to Petition). In her letter, Scott listed the specific pieces of evidence presented at trial that she believed would defeat Simmons' claim that the evidence against him was insufficient. This evidence included the two eyewitness identifications, Simmons' post-arrest statement to the police, and his flight and subsequent apprehension in the vicinity of the scene of the crime. (*Id.*).

The Appellate Division denied Simmons' request to file a supplemental brief. (Denial of Motion, attached as Exhibit C to Reuter Aff.). On May 24, 1994, the Appellate Division affirmed Simmons' conviction in its entirety. *People v. Simmons*, 204 A.D.2d 214, 612 N.Y.S.2d 136 (1st Dep't 1994). Finding that the evidence presented at trial clearly demonstrated that Simmons had displayed a firearm, which justified Simmons' conviction on the more serious offense, the Appellate Division rejected Simmons' argument that the judge should have charged the jury with the lesser included offense. *Id.* 612 N.Y.S.2d at 136. The Appellate Division also found that Simmons had not preserved his objection to the trial court's *Sandoval* ruling and therefore could not raise that issue on appeal. *Id.* The court further stated that if it were to review the trial court's *Sandoval* ruling, it would find that that ruling was not an abuse of discretion. *Id.* The Appellate Division also found that Simmons had not been denied a fair trial because of the reference to his probation status. *Id.*

Simmons was denied leave to appeal to the New York Court of Appeals. *People v. Simmons*, 84 N.Y.2d 872, 618 N.Y.S.2d 18, 642 N.E.2d 337 (1994). Simmons then filed a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel. (Notice of Motion, attached as Exhibit E to Reuter Aff.). He based this claim on Scott's decision not to raise a sufficiency of the evidence claim in her appellate brief. (Affidavit in Support of Motion for a Writ of Error Coram Nobis at ¶ 13, attached as Exhibit E to Reuter Aff.). The Appellate Division, First Department, denied this petition on March 14, 1995. *People v. Simmons*, 213 A.D.2d 240, 624 N.Y.S.2d 814 (1st Dep't 1995).

Simmons has raised four issues in his habeas petition. First, Simmons claims that his conviction was based on evidence legally insufficient to prove his guilt beyond a reasonable doubt. Second, Simmons alleges that he was denied effective assistance of appellate counsel. Third, Simmons alleges that the outcome of the *Sandoval* hearing conducted at his trial deprived him of his right to due process. Finally, Simmons argues that the testimony given by Anavitate about his probation status deprived him of a fair trial.

## II.

In opposition to the petition, the respondent first argues that the entire petition must be dismissed because Simmons has failed to exhaust all currently available state court remedies. The respondent argues that Simmons failed to exhaust the available state court avenues for bringing his claim that the evidence presented at trial was insufficient to support his conviction. The existence of this unexhausted claim, argues the respondent, means that this is a "mixed petition," containing both exhausted and un-exhausted claims, which should be dismissed in its entirety. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982); *Levine v. Commissioner of Correctional Services*, 44 F.3d 121, 124 (2d Cir.1995); *Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994); *Garcia v. Scully*, 907 F.Supp. 700, 705 (S.D.N.Y.1995).

The respondent argues that Simmons has not exhausted all available state proceedings because he can still file a motion, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, challenging the sufficiency of the evidence. This assertion is incorrect.

In *Bossett v. Walker*, 41 F.3d 825 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995), the Court of Appeals for the Second Circuit considered whether the petitioner had exhausted all avenues through which to bring his claim challenging the sufficiency of the evidence. The appellant in *Bossett* had previously sought review by the New York Court of Appeals, but had not presented to that court his claim challenging the sufficiency of the evidence. *Bossett*, 41 F.3d at 829. The court found that "[t]he failure to raise [the sufficiency of the evidence claim] before the [New York] Court of Appeals precludes further consideration in the New York courts because [the appellant] has already made the one request for leave to appeal to which he is entitled." *Id.* (citing N.Y.Court Rules § 500.10(a)).

Moreover, the Court of Appeals found that collateral review, pursuant to CPL § 440.10,

was barred because the sufficiency of the evidence claim could have been raised on direct review, but had not been. *Id.* (citing CPL § 440.10(2)(c)). CPL § 440.10(2)(c) bars collateral attack when

> "Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . ."

Thus, the Court of Appeals found that the petitioner's claim challenging the sufficiency of the evidence had been exhausted, because there was no currently available means of raising that claim in state court.

Simmons sought review by the New York Court of Appeals on other issues, but failed to challenge the sufficiency of the evidence in that appeal. Thus, for the reasons set forth in *Bossett,* Simmons cannot use CPL § 440.10 to bring his sufficiency of the evidence claim, and therefore there are no state court avenues currently available for Simmons to bring this claim. This claim is deemed exhausted. Therefore exhaustion is not a bar to considering Simmons' petition.

### III.

■ While exhaustion is not a bar to considering Simmons' claim of insufficiency of the evidence, this Court still may not consider this claim if Simmons has procedurally defaulted on this claim. The failure to present a claim to a state court for adjudication of the merits normally bars consideration of that issue on a petition for a writ of habeas corpus, *see Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994), unless the petitioner can "demonstrate cause for the procedural default and prejudice flowing therefrom . . . ." *Vargas v. Keane,* 86 F.3d 1273, 1280 (2d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *see also Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–09, 53 L.Ed.2d 594 (1977); *Lebron,* 40

F.3d at 564 (2d Cir.1994). Review is also possible to prevent "a fundamental miscarriage of justice." *Vargas,* 86 F.3d at 1280.

Simmons alleges that the ineffective assistance of his appellate counsel caused his failure to contest the sufficiency of the evidence in state court. Simmons argues that he wanted Scott to raise this claim before the Appellate Division, but Scott would not. According to Simmons, the failure of Scott to raise this issue before the Appellate Division should excuse his procedural default.

■ Ineffective assistance of counsel can provide cause to excuse a procedural default. *See Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986); *McGrath v. United States,* 60 F.3d 1005, 1006 (2d Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996); *Bossett,* 41 F.3d at 829. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). As the Supreme Court has stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. These same standards apply to a claim of ineffective assistance made against appellate counsel. *See Mayo,* 13 F.3d at 533; *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993); *see also Grady v. Artuz,* 931 F.Supp. 1048, 1061 (S.D.N.Y.1996).

■ Ineffective assistance of counsel requires a showing that appellate counsel

"omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F.3d at 533; *see also Grady,* 931 F.Supp. at 1061. To determine whether Scott failed to raise a significant and obvious issue, this Court must evaluate the merits of Simmons' claim that evidence against him was insufficient to prove, beyond a reasonable doubt, that he was guilty of attempted robbery in the first degree.

■ There is a "very heavy burden placed upon a defendant challenging the sufficiency of the evidence underlying his conviction." *Knapp v. Leonardo,* 46 F.3d 170, 178 (2d Cir.), *cert. denied,* 515 U.S. 1136, 115 S.Ct. 2566, 132 L.Ed.2d 818 (1995) (internal citations and quotations omitted). "To succeed, [the defendant] must demonstrate that 'viewing the evidence in the light most favorable to the government . . . no [rational] trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.'" *Knapp,* 46 F.3d at 178 (quoting *United States v. Jones,* 16 F.3d 487, 490 (2d Cir.1994)); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In this case, the question is whether a rational trier of fact could have found the elements of attempted robbery in the first degree proved beyond a reasonable doubt. "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . Displays what appears to be a pistol . . . or other firearm. . . ." N.Y.Penal Law § 160.15. "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y.Penal Law § 110.00.

■ There is no basis for Simmons' claim of ineffective assistance by appellate counsel. As described above, Scott wrote to Simmons stating her reasons for not bringing a claim challenging the sufficiency of the evidence. Scott explained correctly that the prosecution's evidence, if credited by the jury, was clearly sufficient to convict Simmons of at-

tempted robbery in the first degree. This evidence was overwhelming, including two eyewitness identifications. Cardona testified that Simmons had a gun. Simmons made an incriminating statement that suggested both that he committed the crime and that he used a gun in its commission. Finally, Simmons was apprehended quickly in the area where the crime had been committed.

■ Cardona's testimony alone was sufficient to prove the elements of attempted robbery in the first degree beyond a reasonable doubt. This testimony was supported by considerable additional evidence. Simmons could not succeed on his claim challenging the sufficiency of the evidence. Thus, in deciding not to raise a claim contesting the sufficiency of the evidence, Scott made a reasonable tactical decision to appeal Simmons' conviction on less frivolous grounds. Moreover, Scott pursued the three grounds she raised in the appeal vigorously, filing a forty-five page brief. (Brief of Defendant–Appellant, attached as Exhibit A to Reuter Aff.). Scott's decision not to raise this frivolous argument was not ineffective assistance of counsel. Thus, Simmons has failed to show cause for his procedural default.

■ Moreover, Simmons could not make the required showing of prejudice. To show that he was prejudiced by his counsel's failure to challenge the sufficiency of the evidence, Simmons must demonstrate a reasonable possibility that he would succeed on this claim *if it were considered by this Court. See Morrison v. McClellan,* 903 F.Supp. 428, 430 (E.D.N.Y.1995); *see also Taylor v. Mitchell,* 939 F.Supp. 249, 255 (S.D.N.Y. 1996). Given the considerable evidence of Simmons' guilt and the stringent standard a claim challenging the sufficiency of the evidence must satisfy, Simmons suffered no prejudice from the failure to raise this claim. Given the overwhelming evidence against Simmons this is also not a case where the petitioner's procedural default should be excused to prevent a fundamental miscarriage of justice.

Therefore, *Simmons' claim of insufficiency of the evidence is procedurally barred from consideration on this petition.*

In addition to arguing that ineffective assistance of appellate counsel was the cause of his procedural default, Simmons raises ineffective assistance of appellate counsel as an independent ground for his petition. However, the showing required to demonstrate ineffective assistance of counsel for both purposes is the same. *See Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. Therefore, because, as explained above, Simmons has failed to demonstrate that ineffective assistance of counsel provides cause for his procedural default of his sufficiency of the evidence claim, Simmons has also failed to demonstrate ineffective assistance of counsel for the purposes of granting this petition.

**IV.**

Simmons also asserts that his right to due process was violated by the trial court's ruling during the *Sandoval* hearing. However, as the Appellate Division, First Department held, this objection was not raised at trial and therefore was not preserved as a matter of law. *Simmons*, 612 N.Y.S.2d at 137. A federal court can only consider, on a petition for a writ of habeas corpus, a claim on which the petitioner procedurally defaulted in state court if the petitioner can "demonstrate cause for the procedural default and prejudice flowing therefrom...." *Vargas*, 86 F.3d at 1280; *see also Wainwright*, 433 U.S. at 87–91, 97 S.Ct. at 2506–09; *Lebron*, 40 F.3d at 564.

■ Simmons has not even attempted to demonstrate any cause for his failure to object to the *Sandoval* ruling during the trial. Moreover, Simmons has not demonstrated that he suffered any prejudice from his default. To show that he would be prejudiced if foreclosed from challenging the trial court's *Sandoval* ruling, Simmons must demonstrate a reasonable possibility that he would succeed on this claim if allowed to present it to this court. *See Morrison*, 903 F.Supp. at 430; *see also Taylor*, 939 F.Supp. at 255.

■ Federal habeas review of state court rulings is limited to determining whether the alleged error rose to the level of a Constitutional violation. *Estelle v. McGuire*,

502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). Generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a Constitutional violation. *Roberts v. Scully*, 875 F.Supp. 182, 189 (S.D.N.Y.1995), *aff'd*, 71 F.3d 406 (2d Cir.1995); *see also Estelle*, 502 U.S. at 67–68, 112 S.Ct. at 479–80.

■ In this case, the state court committed no error, much less an error rising to the level of a Constitutional violation. In ruling on a *Sandoval* application, the trial court has a wide range of discretion. *Sandoval*, 34 N.Y.2d at 374, 357 N.Y.S.2d at 853, 314 N.E.2d at 417. The court must balance the "probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on one hand, and on the other the risk of unfair prejudice to the defendant...." *Sandoval*, 34 N.Y.2d at 375, 357 N.Y.S.2d at 854, 314 N.E.2d at 418. In Simmons' case, the trial court considered the importance of Simmons testifying, and whether informing the jury of Simmons' past robbery convictions would prejudice his defense. (Tr. at 20–25).

■ The court ruled that some but not all of Simmons' convictions would be admissible, and limited the degree to which the prosecution could refer to the details of the admissible convictions. (Tr. at 24–25). This conclusion was well within the trial court's discretion. Indeed the Appellate Division correctly found that even if the *Sandoval* issue had not been waived, the trial court's ruling was not an abuse of discretion. Thus, Simmons has not shown that he has been prejudiced by his procedural default.

**V.**

Simmons also alleges that the prosecutor improperly elicited from Anavitate testimony regarding his probation status. According to Simmons, this misconduct deprived him of a fair trial and thus his right to due process of law.

■ The Supreme Court has recognized that "prosecutorial misconduct may so infec[t] the trial with unfairness as to make the

resulting conviction a denial of due process.... To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 3108–09, 97 L.Ed.2d 618 (1987) (internal quotations and citations omitted). The question is "whether the prosecutor engaged in egregious misconduct ... amount[ing] to a denial of constitutional due process." *Blissett v. Lefevre*, 924 F.2d 434, 440 (2d Cir.), *cert. denied*, 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991) (internal citations and quotations omitted).

■ In this case there was no prosecutorial misconduct rising to the level of a Constitutional deprivation of Simmons' right to due process. There was no evidence that the prosecutor deliberately elicited the brief comment about Simmons' probation status. Moreover, the court struck the answer and instructed the jury to disregard the response. The defense declined any further curative instruction. The trial court's actions were sufficient to remedy misconduct, even had such misconduct occurred. *See Greer*, 483 U.S. at 766–767 & n. 8, 107 S.Ct. at 3109–3110 & n. 8 (jury assumed to have disregarded inadmissible evidence when instructed to do so by the court); *United States v. Fermin*, 32 F.3d 674, 677–78 (2d Cir.1994), *cert. denied*, 513 U.S. 1170, 115 S.Ct. 1145, 130 L.Ed.2d 1104 (1995) (inadvertent reference to criminal history cured by curative instruction); *United States v. Minicone*, 960 F.2d 1099, 1109 (2d Cir.), *cert. denied*, 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992) (any prejudice to defendants from witnesses' improperly referring to defendants' criminal history remedied by striking the testimony and issuing curative instruction). Thus, the actions of the prosecutor provide no grounds for granting this petition.

## VI.

For the reasons stated above, all of the grounds on which Simmons seeks a writ of habeas corpus are either not properly before this Court, or are without merit. The Petition for a Writ of Habeas Corpus is dismissed. The Clerk is directed to close this case.

**SO ORDERED.**