**Windell GRANT, Plaintiff,**

v.

**Joseph A. DEMSKIE, Defendant.**

**No. 98 Civ. 7278(JES).**

United States District Court,
S.D. New York.

Nov. 17, 1999.

---

Jessica S. Henry, Office of the Appellate Defender, New York, NY, for Plaintiff.

Allen H. Saperstein, Asst. Dist. Atty., Bronx County, Bronx, NY, for Defendant.

## ORDER

SPRIZZO, District Judge.

The above-captioned action having come before this Court, and Petitioner having filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and Magistrate Judge Peck having issued a Report and Recommendation to the Court dated September 10, 1999, recommending that Petitioner's writ of habeas corpus be denied, but that Petitioner be issued a certificate of appealability, and Petitioner having filed his objections to the Report & Recommendation on September 30, 1999, and the Court having considered all matters raised, it is

**ORDERED** that the aforementioned Report and Recommendation is hereby adopted, and it is further

**ORDERED** that for the reasons set forth in the Report and Recommendation, Petitioner's Writ of Habeas Corpus shall be and is hereby denied, and it is further

**ORDERED** that for the reasons set forth in the Report and Recommendation, Petitioner shall be issued a certificate of appealability, and it is further

**ORDERED** that the Clerk of the Court shall close the above-captioned action.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

**To the Honorable John E. Sprizzo, United States District Judge:**

Petitioner Windell Grant was convicted of first degree sexual abuse and endangering the welfare of a child, and sentenced to 3 ½ to 7 years imprisonment. Grant's present habeas petition alleges that the trial court denied him his Fifth, Sixth and Fourteenth Amendment rights to a fair trial, to confront a witness and to present

a defense by precluding evidence of the ten-year old child complainant's prior rape (at age five) and prior and subsequent complaints of sexual abuse. For the reasons set forth below, because Grant did not present sufficient evidence to establish that the prior rape would have enabled the complainant to describe ejaculation, despite being given the opportunity to do so at two hearings, and because there was no clear evidence that any of the child's other accusations of rape/abuse were false, there was no Constitutional violation and the Court should deny Grant's habeas petition.

## FACTS

### *The Trial Evidence*

#### *Grant's Testimony*

On Saturday morning, December 19, 1992, Grant and his common-law wife, Larita Mitchell, drove to a church in Brooklyn to meet Mitchell's two children from a prior relationship who were in foster care—Dominique, age seven, and her brother Dashawn, age nine. (Trial Transcript ["Tr."] 791–93, 795, 831–32.) Grant and Mitchell took the children out for lunch and a drive around Manhattan. (Tr. 795–96.) When they returned to the church to drop the children off, the bus that takes the children back to their foster homes already had left. (Tr. 797, 863.) Grant and Mitchell tried to contact the foster care agency but were unsuccessful, so they went to the police station. (Tr. 797–800, 863.) The police could not reach the foster care agency and, according to Grant, told Grant and Mitchell to take the children home. (Tr. 800.) Grant and Mitchell took the children to the home of Linda Thames, with whom Grant has two children, Jermaine and LaVita (age ten). (Tr. 801, 803–05.) Grant hoped that Thames, who worked as a home attendant for a retired social worker, could help them contact the foster care agency, but she was unable to. (Tr. 802.) Grant and Mitchell went home at around 10:30 or 11:00 p.m., taking Dominique, Dashawn, Jermaine and LaVita home with them. (Tr. 803–04, 865.)

The next morning, Sunday, December 20, 1992, Grant left the apartment at 5:00 a.m. to go to work. (Tr. 810.) When he returned home at 10:30 a.m., Mitchell told him that the social worker had called and told her to return Dominique and Dashawn by noon on Monday. (Tr. 812.) At 11:00 a.m., Grant, Mitchell, Dashawn, LaVita and Jermaine took Dominique to her grandmother's house. (Tr. 813–15.) They picked up Dominique at 5:00 p.m., went to Mitchell's aunt's house for the remainder of the evening, and returned home at midnight. (Tr. 815–16.) On Monday, December 21, 1992, Grant and Mitchell took Dominique and Dashawn back to Brooklyn. (Tr. 817–18.)

Grant denied Dominique's rape allegations. (Tr. 823, 867.)

#### *Dominique's Testimony*

Dominique was ten at the time of trial. (Tr. 570, 615.) Dominique testified that before the incident, she called Grant "Daddy" but now just calls him "[d]efendant, man, and him." (Tr. 596, 661.) Dominique testified that on Sunday morning, December 20, 1992, Mitchell went to the store while Dominique remained with Grant and her brothers and sisters. (Tr. 582–83, 660.) According to Dominique, Grant had LaVita bring him "reefer" in his bedroom, then Grant called Dominique into his bedroom. (Tr. 584–85.) Grant hugged Dominique and kissed her "[w]ith his tongue" on her lips, put his hand up her shirt and touched her breasts, and touched her vagina. (Tr. 585–86, 588–89, 615, 626, 666–68.) Grant pulled down his underwear and put Dominique's hand on his "private part," that is, his "penis." (Tr. 586–87, 667.) Grant told Dominique to "squeeze it [his penis], ... shake it up and down ... and ... pick the hairs ... on his penis ... then this slimy sludge came out of ... [Grant's] pee hole." (Tr. 587, 589–90, 626.) Dominique said Grant's penis "[l]ooked like a rocket" and said it felt "like a baby's bottom ... very soft and sometime[s] it felt soft and hard." (Tr. 587–88.) When they heard Mitchell re-

turning, Grant told Dominique to quickly clean up his penis. (Tr. 590–91.) Grant told Dominique "don't tell anybody or you're going to get a beating," which made her feel "[v]ery scared." (Tr. 592.) Several months later, however, she told her foster mother what had happened. (Tr. 594–95.)

### Other Testimony

Dominique's foster mother, called as a defense witness, testified that when Dominique returned on Monday, December 21, 1992, she did not say anything about a rape and did not appear upset or depressed. (Tr. 889–91, 896, 914–17.) Dominique told her foster mother in February 1993 about Grant's alleged rape of her. (Tr. 908.) The foster mother told Dominique's social worker. (Tr. 922.)

The prosecution's expert, Dr. Linda Cahill, examined Dominique for signs of sexual abuse and reported "no findings of any significance ... [Dominique] had hymenal tissue without any signs of scars or tears or unusual thickening. [But this finding] is consistent [with] a seven-year-old child ['s claim that] a finger went in her vagina." (Tr. 735–40.)

### The Prosecutor's Summation

In summation, the prosecutor emphasized that Dominique was able to describe in detail the molestation:

*[Dominique] testified in detail about what happened.* She testified to, ladies and gentlemen, that when her hand was on his penis, she felt that it was hard but yet soft. That it was smooth like a baby's bottom. She said it looked like a rocket with hair on it.... *And she tells you this rocket, this penis, all of a sudden white stuff—I think she used the word sludge—white sludge started coming out the top.* And I asked her, what do you mean coming out the top? *And she said, this ten-year-old said that white sludge came out where you pee, you know, the tip of your penis where you pee from.*

. . . .

The second thing is [we] must have details of actual facts. Let's check that

out? ... [D]etails are important ... That's what the defense says....

She's telling you in detail. She tells you what happened. She tells you how the kiss felt yucky, the tongue in her mouth felt yucky. She said it hurt when he put his hand on her vagina. How when he had his hand on the breast, he used his other hand to grab her hand and put it on his penis, and *she didn't say a penis and not know what it was. She described it in detail.*

*Ladies and gentlemen, she described in detail she viewed it as a rocket with hair on it and she told you how it was smooth. She told you how it felt. She told you how it looked.*

. . . .

*She told you how it was hard. She told you exactly what she did in order for the white stuff to come out the top. She called it the white sludge.*

. . . .

*She gave details. She gave how she had to wipe the sludge that came out from where you pee. There are so many details.* She told you what happened. She remembered what affected her most. She remembered how it felt, what it looked like, what happened, how she touched it.

. . . .

*Again, details and consistencies is what's necessary when the evaluator makes a determination as to whether or not a child's complaint is valid or not.*

*Ask yourself were there any details?*

. . . .

Is a seven-year old capable of making a lie up and keeping it consistent for three years? Told so many times to so many different people? Is that possible? Especially, ladies and gentlemen, when she has no reason to make this up. She has benefitted zero. She has lost a lot.

(Tr. 1005–06, 1053–56, emphasis added.)

### The Pretrial Preclusion Hearings

Prior to the trial, the prosecutor moved "to preclude evidence or testimony regard-

ing prior sexual abuse of the complainant [Dominique] ... under [New York] CPL 60.42," New York's rape shield law. (Tr. 26–27.)

The defense argued that these incidents were admissible under CPL 60.42(5) (quoted at page 13 below), the provision of New York's rape shield law which provides that after a hearing, a court may admit evidence that would otherwise be excluded if it is relevant and admissible in the interests of justice. (*E.g.,* Tr. 28.) The defense argued, as to the prior rape:

> The fact, however, that she had this sexual experience is very relevant to the issue at this trial for this reason: Normally where you have a case which like this is based entirely on the testimony of the child, ... *the jury is going to ask this question: How would a child know about these specific sexual acts unless it had actually been committed by the defendant? And the answer in this case is she would know about it because she had previously been the victim of a sexual offense.*
>
> Second, your Honor, there is another allegation of sexual molestation that the child had made against another individual and that is a teacher at her school.
>
> And so I do feel there is a fair issue in this case of whether the child does have a *history of having made false allegations.*

(Tr. 28, emphasis added.) Defense counsel continued:

> Typically when the DA's try to preclude from going into a woman's sexual history, the issue is whether the woman consented and the prior sexual history is an attempt to smear the woman by showing she's a sexual libertine. This is a totally different situation. This is a child and we're not arguing the child was consenting or a sexual libertine. *The child was a previous victim of a sexual assault so it doesn't come within the statute at all.*
>
> *The only purpose of bringing this to the attention of the jury is so the jury could understand that the child would have knowledge of sexual matters even*

*if this defendant had not committed the offenses of which he is charged. It's a critical issue in this case.*

(Tr. 29–30, emphasis added; *see also* Tr. 37, 452–53.)

The prosecutor responded that Dominique had little memory of the earlier rape, and, anyway, it was not factually similar:

> [T]he allegations from when she was five which, your Honor, when I have tried to question her about it, *she has basically no memory of what happened when she was five.* She's now ten. She doesn't even remember what happened then *but they are not similar to the events occurring here.* A kiss on the mouth, a touch on the chest, a touch on the vagina, then *a hand to the penis, that wasn't what happened in the first incident [the prior rape] at all.*

(Tr. 33–34, emphasis added.)

At the pretrial hearing, the trial judge indicated that his "inclination at this point" was to exclude the information as "highly prejudicial to the witness" and "the 'kind of evidence that, ... as a matter of public policy, women have been protected against by legislation. . . .'" (Tr. 38.)

After selection of the jury but before opening statements, there was a second discussion of the prosecution's CPL 60.42 application. (Tr. 438.)

The defense claimed that four prior sexual incidents were relevant to show that Dominique had prior sexual knowledge and to establish that she had a pattern of making false claims of abuse to impeach her credibility: (1) a "neighboring youngster" pleaded guilty to raping Dominique by vaginal intercourse (with vaginal tearing but not full penetration) and anal sodomy when she was four or five years old (Tr. 27–28, 438–39, 463); (2) according to the defense, Dominique had accused a teacher of putting his hand under her dress and molesting her, but Grant and Mitchell spoke with the teacher and principal and consequently believe the allegation

was false (Tr. 28, 34–36, 439); (3) Dominique complained to her social worker that Grant forced her to watch LaVita and Dashawn engage in forced sexual intercourse (Tr. 440–41, 476–77); and (4) after accusing Grant of rape but before the trial, Dominique accused her foster brother of rape, he was arrested and his case was pending at the time of Grant's trial (Tr. 441–45).[1] (*See also* Grant Br. at 12.)

Grant's counsel admitted, however, that there was no way to prove whether Dominique's accusations against her teacher were false. (Tr. 35, 456–58, 470–71.) Although Grant's counsel requested a mini-trial to determine the truth of Dominique's accusations that Grant made her watch her brother and LaVita have forced sex, he admitted that the hearing would not conclusively determine the truth of the accusation. (Tr. 459–60, 472–77.) Since the rape claim against Dominique's foster brother was pending, defense counsel conceded that there was no way to prove the truth or falsity of this claim either. (Tr. 444–45, 456.) The defense argued, however, that "there's no requirement in the law that there have been a conclusive determination that an allegation is untrue." (Tr. 445.) Defense counsel also argued that "evidence of a prior complaint is not within the rape shield statute at all ... [because what the] shield statute refers to is evidence of a woman's prior [sexual] conduct and ... the fact that a woman made an allegation [of rape] is not prior sexual conduct [and so] is not even within the rape shield statute." (Tr. 445; *see also* Tr. 447–49.)

The prosecutor reiterated that there was no way to know if Dominique's other allegations were false, and that none of the other alleged incidents involved ejaculation:

This case will talk about hand to the breast, hand to the vagina and *hand to the penis which caused ejaculation. None of these acts were ever complained about in any prior or subsequent sexual act.*

In fact, she's going to testify in great detail how *what she called sludge came out of the penis. She has never seen that happen before but that time.* She never felt a penis but for that one time.... All acts here are unique.

(Tr. 462–63, emphasis added; *see also* Tr. 467–68.)

The trial judge held that all of the incidents fell within the rape shield statute, and could not come in as establishing a pattern of fabricating rape claims. (Tr. 492–509.) The judge denied admission under the interest of justice exception to the rape shield statute, CPL § 60.42(5), stating:

[T]here is that other possibility of consideration of the admissibility of the evidence as being in the interest of justice [under CPL § ] ... 60.42, Section five.

I have listened to ... both sides. It's quite clear to this Court that this case is going to turn on the evidence as provided by the complaining witness....

What are the interests of justice here? Here we have a child which is of a defined group of our society which we recognize through the years has been a defined group that has not always been listened to, has not always been considered, and we know the old phrase that says a child should be seen but not heard. We know that ... adults feel justified in being skeptical in what a child has to say. We know that this kind of ... bias towards questioning the credibility of a person exists and it exists as part of our society.

---

**1.** After Dominique's direct testimony and before cross-examination, Grant's counsel asked the court (outside the jury's presence) if he could ask Dominique if "she had seen her mother doing things with her daddy's penis." (Tr. 600; *see also* Tr. 562–63.) Defense counsel contended this went to the "key issue," the

"critical point," of how a seven year old girl would know that "when you move a person's penis, move your hands on a person's penis, that sludge comes out, ... describing an ejaculation." (Tr. 602, 612.) Consistent with his earlier rulings, the trial judge would not allow the question. (Tr. 613.)

And it seems to me that the section which was designed by the legislature to protect female witnesses in instances of this nature very properly applies to this particular case. . . .

I believe we should start this trial on a level ground and the child's credibility and reliability should be allowed to be tested, which it's going to be I'm sure by cross-examination, and that it be tested fully but not through the injection of these items. . . . So my conclusion . . . is that these items should not be allowed to be entered into evidence and they should not be referred to . . . [unless] the District Attorney . . . opens the door.

(Tr. 502–06.)

### Grant's Direct Appeal and Current Habeas Petition

The jury convicted Grant of first degree sexual abuse (for placing his tongue in Dominique's mouth) and endangering the welfare of a child. (Tr. 541, 1153–57; *see* Pet. ¶ 31.)[2] On March 6, 1996, the trial court sentenced Grant to three and a half to seven years imprisonment. (3/6/96 Sentence Tr. at 20.)

Grant appealed his conviction to the First Department, asserting that: (1) he was denied his constitutional rights to a fair trial, to confront his accuser and to present a defense by the trial court's preclusion of Dominique's prior sexual experiences pursuant to New York CPL § 60.42; (2) the prosecutor's summation denied him a fair trial; (3) the trial court erred in admitting evidence that Grant asked his daughter to bring him marijuana; and (4) the trial court erred in admitting expert testimony concerning child sex abuse syndrome. (*See* Pet.Ex. B & Affidavit of ADA Allen Saperstein, Exs. 1 & 3: Grant 1st Dep't Brs.) *See People v. Grant*, 241 A.D.2d 340, 340, 659 N.Y.S.2d 474, 475 (1st Dep't 1997).

The First Department affirmed, holding, *inter alia:*

The court properly precluded inquiry into alleged incidents of nonconsensual sex experienced by the complainant (CPL § 60.42[5]). There was no evidence that these incidents provided the complainant with knowledge of the sexual activities involved in this case, and, in any event, the complainant's knowledge of sexual matters, or lack thereof, was not at issue. There was also a lack of proof that any of these incidents constituted false allegations, and the court properly exercised its discretion when it prohibited a trial within a trial of their truth or falsity. The court responded appropriately to defense counsel's attempts to circumvent the court's preclusion ruling.

*People v. Grant*, 241 A.D.2d at 340, 659 N.Y.S.2d at 475 (citations omitted).

On August 13, 1997, Grant sought leave to appeal to the New York Court of Appeals (Pet. ¶ 34 & Ex. D: 8/13/97 & 8/26/97 Leave Letters; Saperstein Aff. ¶ 8 & Ex. 5), which was denied on October 29, 1997. *People v. Grant*, 90 N.Y.2d 1011, 666 N.Y.S.2d 106, 688 N.E.2d 1390 (1997). Grant's motion for reconsideration (Pet. ¶ 35 & Ex. E; Saperstein Aff. ¶ 10 & Ex. 7) was denied on December 22, 1997. *People v. Grant*, 91 N.Y.2d 873, 668 N.Y.S.2d 571, 691 N.E.2d 643 (1997).

Grant's current habeas petition—on which he is represented by the Office of the Appellate Defender—raises only one claim: that the trial court denied him his constitutional rights to a fair trial, to confront witnesses, and to present a defense by precluding evidence of Dominique's prior sexual experiences. (Pet.¶¶ 36–44.) The State concedes that the claim was exhausted in state court. (Saperstein Aff. ¶ 13.)

### ANALYSIS

 It is well-established that a federal habeas court "is limited to deciding

---

**2.** The jury found Grant not guilty of (or deadlocked on) three more serious counts of sexual abuse, "charg[ing Grant] with forcing Dominique to touch his penis (count one),

touching Dominique's vagina (count two) and placing his hand on her breasts (count four)." (State Br. at 10; *see also* Pet. ¶ 3; Grant Br. at 9–10; Grant Reply Br. at 5 n. 5.)

whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *accord, e.g., Benitez v. Senkowski*, 97 Civ. 7819, 1998 WL 668079 at *4 (S.D.N.Y. Sept. 17, 1998) (Cote, D.J. & Peck, M.J.); *see also, e.g., James v. Senkowski*, 97 Civ. 3327, 1998 WL 217903 at *5 (S.D.N.Y. April 29, 1998) (Cote, D.J. & Peck, M.J.); *Simmons v. Ross*, 965 F.Supp. 473, 480 (S.D.N.Y.1997). "In general, rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue." *Roberts v. Scully*, 875 F.Supp. 182, 189 (S.D.N.Y.), *aff'd mem.*, 71 F.3d 406 (2d Cir.1995); *see also, e.g., Benitez v. Senkowski*, 1998 WL 668079 at *4; *James v. Senkowski*, 1998 WL 217903 at *5; *Simmons v. Ross*, 965 F.Supp. at 480. "Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." *McCray v. Artuz*, 93 Civ. 5757, 1994 WL 603057 at *2 (S.D.N.Y. Nov.3, 1994); *see also, e.g., Rosario v. Kuhlman*, 839 F.2d 918, 924–25 (2d Cir.1988) ("erroneous evidentiary rulings do not automatically rise to the level of constitutional error"; habeas courts must determine whether inclusion of evidence was an error of constitutional dimension by depriving petitioner of a fundamentally fair trial); *Benitez v. Senkowski*, 1998 WL 668079 at *4; *James v. Senkowski*, 1998 WL 217903 at *5; *Watson v. Kelly*, 91 Civ. 7925, 1996 WL 409198 at *3 (S.D.N.Y. July 22, 1996).

▇ A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the "heavy burden" of establishing that the trial court's error constituted a deprivation of a constitutionally recognized right such as the right to a fair trial. *Roberts v. Scully*, 875 F.Supp. at 189; *accord, e.g., Benitez v. Senkowski*, 1998 WL 668079 at *5; *James v. Senkowski*, 1998 WL 217903 at *5–6.

▇ "[T]o determine whether a constitutional violation has occurred through the erroneous admission of evidence, the petitioner must show that 'the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been "crucial, critical, highly significant." ' " *Schurman v. Leonardo*, 768 F.Supp. 993, 1001 (S.D.N.Y.1991) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (citations omitted)); *accord, e.g., Benitez v. Senkowski*, 1998 WL 668079 at *5; *James v. Senkowski*, 1998 WL 217903 at *6.

## I. *NEW YORK'S RAPE SHIELD LAW*

"Rape shield laws have been enacted by Congress and the majority of states." *Agard v. Portuondo*, 117 F.3d 696, 702 (2d Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999).

Under New York's rape shield law,

Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:

. . . .

5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

N.Y. CPL § 60.42.

The purpose of New York's rape shield law is to prohibit cross-examination about a victim's sex life. *See, e.g., Agard v. Portuondo*, 117 F.3d at 703 ("Rape shield laws serve the broad purpose of protecting the victims of rape from harassment and embarrassment in court, and by doing so

seek to lessen women's historical unwillingness to report these crimes."). As the legislative history to New York's rape shield law states:

Present law allows defense counsel wide latitude in exploring a victim's past sex life in prosecutions for sex offenses. Such evidence, particularly in cases of forcible rape or sodomy, seldom elicits testimony relevant to the issues of the victim's consent or credibility, but serves only to harass the alleged victim and confuse the jurors. Focusing upon the immaterial issue of a victim's chastity tends to demean the witness, discourages the prosecution of meritorious cases, and leads to acquittals of guilty defendants.

The [rape shield] bill therefore limits the introduction of such evidence and attempts to strike a reasonable balance between protection of a victim's privacy and reputation while not infringing on the defendant's right to a fair trial based on the presumption of innocence....

Memorandum of Assemblyman Stanley Fink, accompanying Assembly Bill No. 6698, Senate Bill No. 4821, N.Y.Legis. Annual (1975) at 47–48; *see also*, H.R.4727, 124 Cong.Rec. H. 11944 at p. 34913 (Oct. 10, 1978) (statement of Rep. Holtzman of New York) ("Too often in this country victims of rape are humiliated and harassed when they report and prosecute the rape. Bullied and cross-examined about their prior sexual experiences, many find the trial almost as degrading as the rape itself. Since rape trials become inquisitions into the victim's morality, not trials of the defendant's innocence or guilt, it is not surprising that it is the least reported crime."). The rape shield laws also serve to "reinforce the trial judge's traditional power to keep inflammatory and distracting evidence from the jury." *Agard v. Portuondo*, 117 F.3d at 703 (citing *Sandoval v. Acevedo*, 996 F.2d 145, 148–49 (7th Cir.), *cert. denied*, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 255 (1993)).

The Second Circuit has upheld the facial constitutionality of the New York rape shield statute. *Agard v. Portuondo*, 117 F.3d at 703. The "discretionary power" that New York's rape shield law gives to the trial judge, "however, must be exercised within the boundaries of the Sixth and Fourteenth Amendments." *Id.* at 703. Thus, New York "may restrict a defendant's introduction of evidence without violating the constitutional right to present a defense so long as those restrictions are neither 'arbitrary [n]or disproportionate to the purposes they are designed to serve.'" *Agard v. Portuondo*, 117 F.3d at 702; *see also, e.g., Michigan v. Lucas*, 500 U.S. 145, 149–53, 111 S.Ct. 1743, 1746–48, 114 L.Ed.2d 205 (1991) (upholding state notice requirement for a defendant's claim of prior sexual conduct with the victim).

Grant argues that: (1) Dominique's prior rape is not "sexual conduct" within the meaning of CPL § 60.42, and therefore should not have been precluded under the rape shield law; (2) Dominique's prior rape was relevant to provide an alternative explanation to her sophisticated sexual knowledge; and (3) Dominique's false allegations of rape were relevant to impeach her credibility and to show a motive to fabricate. (Pet. ¶¶ 37–40; Grant Br. at 14–39; Grant Reply Br. at 3–9.) The Court will address each argument seriatim.

II. *UNDER EITHER THE MAJORITY VIEW THAT PRIOR RAPE IS "SEXUAL CONDUCT" AND COVERED BY THE RAPE SHIELD LAW, OR THE MINORITY VIEW THAT IT IS NOT, THE TRIAL COURT'S EXCLUSION OF DOMINIQUE'S PRIOR RAPE WAS NOT CONSTITUTIONAL ERROR*

Grant argues that "since Dominique was under the age of seventeen, she was incapable, as a matter of law, of consenting to sexual intercourse, deviate sexual intercourse, or sexual contact,"[3] and

---

**3.** *See* N.Y.CPL § 130.05 (McKinney 1995).

therefore her "prior rape should not be characterized as 'sexual conduct' which falls within the ambit of the rape shield statute." (Grant Br. at 19.) "Sexual conduct" is defined under New York Penal Law as "sexual intercourse, deviate sexual intercourse, aggravated sexual contact, or sexual contact." N.Y.Penal Law § 130.00(10).

The New York Court of Appeals has not ruled on whether a prior rape is "sexual conduct" under the New York rape shield law.[4] Courts in other states are split as to whether prior rape or sexual abuse constitutes "sexual conduct" under rape shield laws. If the New York Court of Appeals were to adopt the First Department's decision in Grant's case, it would adopt the majority view.

The majority of states view prior rape or sexual abuse of a child as "sexual conduct" within the ambit of state rape shield laws. *See, e.g., State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071, 1076–78 (1988) (en banc); *Ashby v. State,* No. CACR 94–1016, 1995 WL 529596 at *2–3 (Ark.Ct.App. Sept. 6, 1995); *People v. Aldrich,* 849 P.2d 821, 824–25 (Colo.Ct.App.1992) ("Although neither the General Assembly nor our courts have defined the term 'prior sexual conduct,' courts in other jurisdictions have construed their rape shield statutes to include prior sexual assaults," and court holds "that the rape shield statute encompasses involuntary acts within the meaning of prior sexual conduct...."); *State v. Kulmac,* 230 Conn. 43, 644 A.2d 887, 894 (1994); *People v. Darby,* 302 Ill.App.3d 866, 236 Ill.Dec. 176, 706 N.E.2d 1050, 1056 , *appeal denied,* 184 Ill.2d 562, 239 Ill.Dec. 610, 714 N.E.2d 529 (1999); *Little v. State,* 413 N.E.2d 639, 643 (Ind.Ct.App.1980) ("Admission of true accusations of sexual misconduct is prohibited by the Rape Shield Law because they would be evidence of the victim's sexual conduct."); *State v. Jones,* 490 N.W.2d 787, 790 (Iowa 1992) ("We think the term past sexual behavior as it is used in the [rape shield] rule clearly en-

compasses prior sexual abuse perpetrated upon the victim."); *State v. Michel,* 633 So.2d 941, 943–44 (La.Ct.App.1994); *State v. Almurshidy,* 732 A.2d 280, 286–87 (Me. 1999); *State v. Jacques,* 558 A.2d 706, 708 & n. 2 (Me.1989) ("Evidence of sexual abuse by others would fall within the scope of the [state's rape shield law.] ... We reject, as providing insufficient protection to victims, the defendant's proposed interpretation of 'sexual behavior' to apply only to a victim's 'volitional sexual behavior.' "); *State v. Packer,* 295 N.W.2d 266, 267 (Minn.1980); *Peterson v. State,* 671 So.2d 647, 657–58 (Miss.1996); *State v. Steffes,* 269 Mont. 214, 887 P.2d 1196, 1206 (1994) ("The purpose of [Montana's rape shield law] is to prevent the trial from becoming a trial of .the victim.... We have determined that inadmissible evidence concerning sexual conduct of the victim includes prior sexual abuse.... [W]e have determined that a defendant's constitutional right to confront witnesses is not violated by the exclusion of evidence of the victim's prior sexual abuse unless the victim's accusations or allegations of prior sexual abuse have been proven to be false."); *State v. Bass,* 121 N.C.App. 306, 465 S.E.2d 334, 336–37 (1996) ("We conclude that the prior abuse alleged here is 'sexual activity' within the ambit of" the state rape shield law.); *State v. Budis,* 125 N.J. 519, 593 A.2d 784, 790–94 (1991); *State v. Montoya,* 91 N.M. 752, 580 P.2d 973, 974 (App.1978) ("Defendant's claim ... was that [rape shield law] did not apply to questions concerning a prior rape. The argument was that 'past sexual conduct' in [the rape shield law] means only consensual sex acts. We disagree.... [The state's rape shield law] is not limited to sex by consent; rather, by its unlimited wording, it applies to all forms of past sexual conduct. The trial court correctly ruled that the prior rape was past sexual conduct within the meaning of" the rape shield law.), *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978); *In re Michael,* 119 Ohio App.3d 112, 694 N.E.2d

**4.** New York decisions do hold that a prior, unproven complaint of rape does not come

within the rape shield law. *See* discussion in Point III at pages 220–21 below.

538, 542–45 (1997); *State v. Wright,* 97 Or.App. 401, 776 P.2d 1294, 1297–98 , *review denied,* 308 Or. 593, 784 P.2d 1100 (1989); *Commonwealth v. Johnson,* 389 Pa.Super. 184, 566 A.2d 1197, 1199–200 (1989) ("assaultive sexual activity is covered by the Rape Shield Law"), *aff'd,* 536 Pa. 153, 638 A.2d 940 (1994); *Ex parte Rose,* 704 S.W.2d 751, 756 (Tex.Crim.App. 1984) (en banc) ("Reading the phrase or term 'sexual conduct' in the context in which it is used in [the state rape shield law] and in accordance with common usage, we hold that it encompasses sexual activity or conduct whether willingly engaged in or not, including situations where the 'victim' … was involved in a prior rape…. It is clear from a reading of the [rape shield] statute, its purpose and the spirit of the law itself that a prior rape is 'sexual conduct' of the victim, even though it is initiated by another and then involuntarily engaged in by the victim."); *State v. Pulizzano,* 155 Wis.2d 633, 456 N.W.2d 325, 329 (1990) ("The prior sexual assault [the child victim] experienced clearly constitutes 'sexual conduct' as that term is defined in [the state rape shield law]. As the evidence does not fall within any of the enumerated exceptions, the statute bars its admission.").

On the other hand, a minority of states hold that prior rape or sexual abuse of a child is not evidence of unchastity and therefore is not "sexual conduct" within the ambit of state rape shield laws. *See, e.g., Lemacks v. State,* 207 Ga.App. 160, 427 S.E.2d 536, 537 (1993) (" '[P]rior rape committed against the victim has nothing whatsoever to do with her past sexual behavior.' It is no reflection on character that one has been an unwilling victim of prior crimes."); *State v. Lampley,* 859 S.W.2d 909, 911 (Mo.Ct.App.1993) (prior molestation and removal of offender from victim's home is relevant to victim's credibility not victim's sexual conduct and therefore is not covered by rape shield statute); *Summitt v. State,* 101 Nev. 159, 697 P.2d 1374, 1378 (1985) (Steffen, J., concurring and dissenting) ("The purposes

of the 'rape victim shield law' … would not have been frustrated by the terse admission of facts concerning the earlier experience [of rape] since the child, then age four, was clearly a victim whose reputation would have been unaffected by such a disclosure. The admission of the prior occurrence would permit the defendant to disabuse jurors who might conclude that the child's familiarity with fellatio could not have existed absent the actuality of the ordeal described at trial by the child. Evidence of the prior incident would not relate to the sexual conduct of the child, but rather her experience as a tender-aged victim of a sexual assault."); *State v. Besk,* 138 N.H. 412, 640 A.2d 775, 775–77 (1994) (state's rape shield law specifically states that it applies only to " '[p]rior consensual sexual activity' "); *State v. Markle,* 118 Wash.2d 424, 823 P.2d 1101, 1109 (1992) (en banc) (evidence of prior sexual abuse not prohibited under rape shield law since it is not evidence of victim's prior sexual activity or misconduct).

This Court, however, need not decide which view is "correct," or which view the New York Court of Appeals would adopt, since under either the majority or minority view, Grant did not make a proffer that the prior rape was sufficiently similar to the current charges as to be probative of Dominique's prior sexual knowledge.

### A. *Under the Majority View That Rape Is Sexual Conduct, Not Admitting Dominique's Prior Rape Was Not Constitutional Error Because Grant Did Not Demonstrate Sufficient Similarity Between the Prior Rape and the Current Incident Such That Its Relevance Constitutionally Required its Admission Despite the Rape Shield Law*

■■ The right of an accused to cross-examination "is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation…. It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which

is this country's constitutional goal.'" *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973); *accord, e.g., Latzer v. Abrams,* 602 F.Supp. 1314, 1317 (E.D.N.Y.1985). "Cross-examination is the principle means by which the believability of a witness and the truth of [her] testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Nonetheless, " '[t]he right to present relevant testimony is not without limitation. The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." ' " *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987) (quoting *Chambers v. Mississippi,* 410 U.S. at 295, 93 S.Ct. at 1045)); *see also, e.g., Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967); *Agard v. Portuondo,* 117 F.3d 696, 702 (2d Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999); *Latzer v. Abrams,* 602 F.Supp. at 1318. The limitations placed on a defendant's right to present relevant testimony, however, cannot be " 'arbitrary [n]or disproportionate to the purposes they are designed to serve.' " *Agard v. Portuondo,* 117 F.3d at 702 (quoting *Rock v. Arkansas,* 483 U.S. at 55, 107 S.Ct. at 2711).

Federal courts have held that preventing a rape defendant from showing that the child complainant was previously raped or assaulted in order to offer an alternative explanation for the child's injuries, is disproportionate to the ends the rape shield laws are designed to serve, and violates the defendant's Sixth Amendment confrontation right. *E.g., Tague v. Richards,* 3 F.3d 1133, 1139 (7th Cir.1993) (defendant should have been allowed to present evidence that the eleven year old victim was previously raped by her father, to advance an alternate theory of why the child's hymen was enlarged and how she got a sexually transmitted disease); *United States v. Bear Stops,* 997 F.2d 451, 457 (8th Cir.1993) (en banc) (district court im-

properly limited the defense's proffer that three boys raped the child complainant before the defendant allegedly attacked the child, which could have provided an alternative explanation for the child's exhibition of sexual abuse symptoms); *United States v. Begay,* 937 F.2d 515, 519–23 (10th Cir.1991) (error to exclude evidence of child's prior rape as alternative theory of how child's hymen came to be injured); *Latzer v. Abrams,* 602 F.Supp. 1314, 1319–21 (E.D.N.Y.1985) (habeas petitioner was denied his Sixth Amendment right to cross-examine the child complainant and his brother with respect to their sexual relations with other men to establish that the brothers misidentified the accused, where the trial court did not hold a hearing to inquire into the relevance of the brothers' prior sexual conduct).

These federal cases are of little relevance here, however, because Grant was not offering the evidence of Dominique's prior rape to offer an alternative explanation for any physical (or emotional) injuries. Rather, Grant proffered the prior rape evidence to show that Dominique's knowledge of sexual matters such as ejaculation could have come from that prior incident. Thus, Grant was attempting to rely on what some commentators refer to as the "sexual innocence inference theory":

> The theory is based on the premise that because most children of tender years are ignorant of matters relating to sexual conduct, a child complainant's ability to describe such conduct may persuade the jury that the charged conduct in fact occurred. To demonstrate that the child had acquired sufficient knowledge to fabricate a charge against the defendant, the theory reasons, the court should allow the defense to offer evidence that the child acquired sexual experience with someone else before he or she accused the defendant.

Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior,* 44 Cath.U.L.Rev. 709, 806

(1995); *see also, e.g.,* Christopher B. Reid, Note, *The Sexual Innocence Inference Theory as a Basis for the Admissibility of a Child Molestation Victim's Prior Sexual Conduct,* 91 Mich.L.Rev. 827, 829–30 (1993).

In response to the sexual innocence inference theory, many state courts have held that despite rape shield laws, the Constitution, state law or judicial discretion require that under appropriate circumstances, a defendant be allowed to show that a child complainant was previously raped in order to offer an alternative explanation for the child's sophisticated sexual knowledge. *See, e.g., State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071, 1077–78 (1988) (en banc); *People v. Hill,* 289 Ill. App.3d 859, 225 Ill.Dec. 244, 683 N.E.2d 188, 192 , *appeal denied,* 175 Ill.2d 540, 228 Ill.Dec. 722, 689 N.E.2d 1143 (1997); *State v. Jones,* 490 N.W.2d 787, 791 (Iowa 1992) ("Given the age [13] of the victim at the time she testified, the education and counseling she had received in the interim between the abuse and the trial, and the rather inexplicit nature of the testimony, ... we find it unlikely that a jury would infer that the victim could only describe the act because [defendant] had, in fact, done it," and so no error to have excluded evidence of prior abuse of victim); *State v. Lavery,* 19 Kan.App.2d 673, 877 P.2d 443, 450–51 (1993); *Commonwealth v. Ruffen,* 399 Mass. 811, 507 N.E.2d 684, 687–88 (1987); *State v. Jacques,* 558 A.2d 706, 708 (Me.1989) ("Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor. A defendant therefore must be permitted to rebut the inference a jury might otherwise draw that the victim was so naive sexually that she could not have fabricated this charge."); *State v. Benedict,* 397 N.W.2d 337, 341 (Minn.1986) ("Despite the prohibition of a rape-shield law or rule, a trial court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was

the source of the knowledge."); *Woodruff v. State,* 518 So.2d 669, 672–73 (Miss.1988); *Summitt v. State,* 101 Nev. 159, 697 P.2d 1374, 1376–77 (1985); *State v. Howard,* 121 N.H. 53, 426 A.2d 457, 462 (1981) ("We believe that the average juror would perceive the average twelve-year old girl as a sexual innocent. Therefore, it is probable that jurors would believe that the sexual experience she describes must have occurred in connection with the incident being prosecuted; otherwise, she could not have described it. However, if [child] rape victims have had other sexual experiences, it would be possible for them to provide detailed, realistic testimony concerning an incident that may never have happened.... Accordingly, a defendant must be afforded the opportunity to show, by specific incidents of sexual conduct, that the prosecutrix has the experience and ability to contrive a statutory rape charge against him."); *State v. Budis,* 125 N.J. 519, 593 A.2d 784, 791 (1991) ("The majority of out-of-state courts agree that the prior sexual abuse of a youthful victim is relevant to rebut the inference that the complainant could not describe the details of sexual intercourse if the defendant had not committed the acts in question.... Although we recognize that children today are more sexually sophisticated than those of an earlier era, we doubt that a jury would expect a nine year old girl ... to know the intricacies of oral and vaginal sex.... Here, the State concedes that the prior acts occurred and that they closely resemble those allegedly committed by defendant."); *People v. Ruiz,* 71 A.D.2d 569, 570, 418 N.Y.S.2d 402, 403 (1st Dep't 1979); *In re Michael,* 119 Ohio App.3d 112, 694 N.E.2d 538, 544–45 (1997) ("the average factfinder would consider a child of [nine] to be a sexual innocent. Therefore, the factfinder would believe the sexual experience he described must have occurred in connection with the incident being prosecuted; otherwise he could not have described it"); *State v. Oliveira,* 576 A.2d 111, 113–14 (R.I.1990) (evidence of prior rape of eight year old child, who was

eleven at time of trial, should have been admitted "to demonstrate to the jury that [child] had other sources for her knowledge of the sexual acts she had described," particularly in light of prosecutor's summation that " '[n]o eight-year-old child ... would know about ejaculation, unless she had been subjected to the same herself.' "); *State v. Peterson,* 35 Wash. App. 481, 667 P.2d 645, 648 (1983); *State v. Pulizzano,* 155 Wis.2d 633, 456 N.W.2d 325, 333–34 (1990) ("Evidence of the prior sexual assault is probative of a material issue, to show an alternative source for sexual knowledge, and is necessary to rebut the logical and weighty inference that [the child complainant] could not have gained the sexual knowledge he possessed unless the sexual assaults [defendant] is alleged to have committed occurred."); *Butterfield v. Cook,* 817 P.2d 333, 339–40 (Utah Ct.App.), *cert. denied,* 826 P.2d 651 (Utah 1991); *see also, e.g.,* David Daxton, Comment, *Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence,* 1985 Wis.L.Rev. 1219, 1234 (1985); Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade,* 70 Minn.L.Rev. 763, 865–68 (1986); Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior,* 44 Cath.U.L.Rev. at 805–09; Francis A. Gilligan, Edward J. Imwinkelried & Elizabeth F. Loftus, *The Theory of "Unconscious Transference": The Latest Threat to the Shield Laws Protecting the Privacy of Victims of Sex Offenses,* 38 B.C.L.Rev. 107, 140–42 (1996) ("There are numerous cases upholding the admission of evidence [of prior rape or abuse] on [the sexual innocence inference] theory.") (discussing different states' approaches to the issue); John E.B. Meyers, *The Child Witness: Techniques for Direct Examination, Cross–Examination, and Impeachment,* 18 Pac.L.J. 801, 900–08 (1987); Christopher B. Reid, Note, *The Sexual Innocence Inference Theory as a Basis for the Admissibility of a Child Molestation Victim's Prior Sexual Conduct,* 91 Mich.

L.Rev. at 842–50; Danny R. Veilleux, Annotation, *Admissibility of Evidence that Juvenile Prosecuting Witness in Sex Offense Case Had Prior Sexual Experience For Purposes of Showing Alternative Source of Child's Ability to Describe Sex Acts,* 83 A.L.R.4th 685 (1991); *but see, e.g., People v. Rice,* 709 P.2d 67, 68–69 (Colo.Ct.App.1985) (Colorado's rape shield statute by its terms prohibits admission of prior rape or abuse to show that twelve year old girl fabricated the charges); *State v. Clarke,* 343 N.W.2d 158, 162–63 (Iowa 1984) (prior rape or abuse is not admissible because the sexual inference theory "is based on unsubstantiated assumptions and fears about what a jury may infer from the complaining witness's testimony."); 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5387 & n. 95–2 (1999 Supp.) ("In a number of states, courts have held that in cases of child sexual abuse the defendant has a right to show the prior sexual conduct of the child to rebut any inference that the child's sexual sophistication is the result of the encounter with the defendant. This seems unnecessary inasmuch as the defendant can easily rebut this inference by questions or evidence limited to the child's prior knowledge of sexual terminology or practices, assuming that the prosecutor would not be willing to stipulate that the child was not sexually innocent.").

The different state approaches to the interplay between rape shield laws and the sexual innocence inference theory has been summarized by a commentator as follows:

At present, the lower courts are split over the question of whether this theory of logical relevance is potent enough to surmount a rape shield law. Maine, Nevada and New Hampshire courts have embraced this theory. According to one commentator, these liberal decisions represent the trend in the case law. However, there are conservative decisions from Iowa and Michigan rejecting the theory. Furthermore, there is a

third, compromise view, followed in such states as Arizona, Massachusetts, and Wisconsin. The courts in these jurisdictions carefully scrutinize the quantum of the probative value of the evidence. Hence, they might grant the accused a right to introduce evidence of the complainant child's sexual contact with a third party if the sexual conduct in question was not only unusual but also strikingly similar to the alleged contact with the accused.

Francis A. Gilligan, Edward J. Imwinkelried & Elizabeth F. Loftus, *The Theory of "Unconscious Transference": The Latest Threat to the Shield Laws Protecting the Privacy of Victims of Sex Offenses,* 38 B.C.L.Rev. at 140–41 (fns.omitted); *see generally, e.g.,* Christopher B. Reid, Note, *The Sexual Innocence Inference Theory As A Basis for the Admissibility of A Child Molestation Victim's Prior Sexual Conduct,* 91 Mich.L.Rev. at 842–50.

This Court, of course, is not charged with judicially drafting the way in which the New York courts, as a matter of state law, should interpret New York's rape shield law. The only issue here is whether the trial court's exclusion of evidence of Dominique's prior rape renders Grant's conviction constitutionally unfair. The Court finds that it does not.

As a matter of constitutional law, the Court must balance the somewhat conflicting interests of the policies behind rape shield laws and a criminal defendant's confrontation rights. While expressed in different ways, the state courts that have reached this constitutional issue engage in a traditional balancing test, weighing the probative value of the proffered evidence against its prejudicial effect. *See, e.g., State v. Benedict,* 397 N.W.2d at 341 ("Despite the prohibition of a rape-shield law or rule, a trial court has discretion to admit evidence tending to establish a source of knowledge of or familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge.... However, as in ruling on the admission of other kinds of evidence, the trial court

ought to balance the probative value of the evidence against its potential for causing unfair prejudice."); *Summitt v. State,* 697 P.2d at 1377 (trial court should "undertake to balance the probative value of the evidence against is prejudicial effect ... and ... the inquiry should particularly focus upon 'potential prejudice to the truthfinding process itself,' *i.e.,* 'whether the introduction of the victim's past sexual conduct may confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis'").

The Supreme Court of Wisconsin has stated a five part test for this constitutional balancing that this Court finds helpful:

[T]o establish a constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge, prior to trial the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those in the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. If the defendant makes that showing, the [trial] court must then determine whether the State's interests in including the evidence are so compelling that they nonetheless overcome the defendant's right to present it.

*State v. Pulizzano,* 456 N.W.2d at 335; *see also, e.g., State v. Oliver,* 760 P.2d at 1077 (adopting two-pronged approach: "Under the first prong, the defendant must show, in camera, that the victim previously had been exposed to a sexual act.... Under the second prong, the defendant must establish that the prior sexual act was sufficiently similar to the present sexual act to give the victim the experience and ability to contrive or imagine the [present rape or] molestation charge."); *Commonwealth v. Ruffen,* 507 N.E.2d at 687–88; *State v. Budis,* 593 A.2d at 790 ("The probative value of the prior acts depends on clear

proof that they occurred, that the acts are relevant to a material issue in the case, and that they are necessary to the defense ... When evidence is offered to show a child's knowledge of sexual acts, its relevance also depends on whether the prior abuse closely resembles the acts in question."); *see also* Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to A Sex Offense Complainant's Past Sexual Behavior*, 44 Cath. U.L.Rev. at 807–09; Francis A. Gilligan, Edward J. Imwinkelried & Elizabeth F. Loftus, *The Theory of "Unconscious Transference": The Latest Threat to the Shield Laws Protecting the Privacy of Victims of Sex Offenses*, 38 B.C.L.Rev. at 141–42; Christopher B. Reid, *The Sexual Innocence Inference Theory As A Basis for the Admissibility of A Child Molestation Victim's Prior Sexual Conduct*, 91 Mich.L.Rev. at 861–62.

It is clear that the trial court in Grant's case did not act "arbitrarily" in excluding evidence of the prior rape, since it held two hearings on the issue (Tr. 26–39, 438–507), at which Grant and the prosecution had ample opportunity to present their arguments.

It is also clear that the trial judge's ruling was not disproportionate to the purpose it was designed to serve. Grant satisfied the first *Pulizzano* prong since it was uncontested that the prior rape occurred (Tr. 457, 462), but Grant failed to satisfy the crucial second *Pulizzano* prong. Grant states in his habeas brief that "the rape at age four clearly enabled [Dominique] to describe a penis and ejaculation." (Grant Br. at 23.) The trial transcript, however, does not support this argument. Grant's trial attorney did not proffer any evidence that the prior rape involved eja-

culation or that the prior acts closely resembled those in the present case. Grant's trial counsel merely stated that Dominique "alleged that a neighboring youngster had placed his penis into her vagina. Apparently there was tearing but there wasn't full penetration." (Tr. 438.) The prosecutor, however, responded by representing that there was no similarity between the two incidents:

This case will talk about hand to the breast, hand to the vagina and *hand to the penis which caused ejaculation. None of these acts were ever complained about in any prior or subsequent sexual act.*

In fact, *[Dominique is] going to testify in great detail how what she called sludge came out of the penis. She [has] never seen that happen before but that time. She never felt a penis but for that one time.* She's never had someone touch her vagina but for that one time or the chest or the kissing with the tongue. *All acts here are unique.*

The incident that occurred when she was four she doesn't have any recollection of but it was anal sodomy and slight vaginal intercourse. I believe there were problems so he anally sodomized her. That's totally different from the incident here.

(Tr. 462–63, emphasis added; *see also* Tr. 467–68.) Grant's attorney did not disagree with the prosecutor's proffer about the specifics of the prior incident.

Accordingly, because Grant did not proffer evidence that the prior rape was similar to the current incident, and there was no evidence that it was relevant to explain Dominique's sophisticated knowledge of an erection and ejaculation,[5] the trial judge

**5.** The State argues that there is nothing out of the ordinary about Dominique's description of a penis and ejaculation: "Dominique testified in simple words, describing the acts—'sludge' coming out of petitioner's 'pee hole'—and not naming them. She displayed no more than a basic, child-like knowledge of sexual matters." (State Br. at 7–8.) While Dominique may have described ejaculation using a child's vocabulary, the issue is not her linguis-

tic skills but her knowledge of sexual stimulation, erection and ejaculation. The Court disagrees that a ten-year-old girl's "basic" sexual knowledge includes a description of ejaculation. Indeed, Grant's experienced appellate counsel agrees with the Court that "most ten-year-old girls would be unfamiliar with ejaculation unless they had witnessed it first hand." (Grant Br. at 22.)

did not commit constitutional error by excluding evidence about the prior rape. *See, e.g., United States v. Bear Stops,* 997 F.2d at 458–59 (district court properly disallowed evidence of prior sexual abuse to show sexual sophistication where the child's testimony was in "age appropriate language" and "evidence was not offered indicating that the sexual acting out [between a four-year-old boy and his six-year-old brother] was similar in nature to the alleged sexual assault" by defendant); *People v. Hill,* 225 Ill.Dec. 244, 683 N.E.2d at 192–93 ("The conduct must be sufficiently similar to defendant's alleged conduct [and] must engage the same sexual acts embodied in the child's testimony.... Although defendant demonstrated an ability to establish a similar sexual act, he failed to demonstrate that his proof could fully rebut [the child's] unique sexual knowledge. [The child's] knowledge was not derived from a prepubescent boy. Too many sexual details remain unaccounted for after consideration of what defendant hoped to prove with the prior sexual conduct."); *State v. Lavery,* 877 P.2d at 450–51 ("The only similarity between the [prior abuse] evidence and [defendant's] actions was that they both had allegedly put their hands down [the child's pants]. There was no evidence proffered that [the prior abuser] had sodomized [the child]. The [prior abuse] evidence was not relevant to the case at hand.... The fact [the prior abuser] allegedly put his hand in [the child's] pants does not tend to prove whether or not she was sodomized by [defendant].... In all the cases cited by [defendant] in support of his contention, the complaining witness' previous sexual conduct was similar to the acts with which the defendant was charged. It cannot be said that the trial court abused its discretion in disallowing evidence of [the child's] previous sexual experience because it was not sufficiently similar to the acts charged."); *State v. Peterson,* 667 P.2d at 648 ("[H]ere, [defendant] failed to lay a foundation for his claim that [child complainant] was fabricating this incident. He made no offer of proof that ... her story was so similar to

the previous incidents that she was probably fantasizing.... Inasmuch as [defendant] did not present the trial court with any evidence of relevancy, we cannot say the trial court abused its discretion by excluding evidence of the prior sexual abuses."); *State v. Padilla,* 110 Wis.2d 414, 329 N.W.2d 263, 271 (1982) ("Although the defense had the mother's testimony showing that, quite possibly, the prosecutrix had engaged in a sexual experience before the present assault, there was no offer of proof to show that the facts were so related as to be relevant. The assumption of the same type of explicit sexual knowledge as reportedly gained from the present sexual assault is unwarranted. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to determination of the action more probable or less probable than it would be without the evidence.... We cannot tell the relevancy without an offer of proof.").

In short, because Grant's offer of proof concerning the prior rape did not even suggest that ejaculation was involved, and because defense counsel did not contradict the prosecutor's representation that the facts of the prior rape were not similar to Dominique's charges against Grant, the trial court did not commit constitutional error in excluding prior rape evidence pursuant to the state's rape shield law.

**B. *Under the Minority View That Rape Is Not Sexual Conduct, There Was No Constitutional Error Since the Trial Court Did Not Abuse Its Discretion in Determining That the Prior Rape Was More Prejudicial Than Probative Of Dominique's Sexual Knowledge***

Grant claims that Dominique's prior rape as well as her observation of her parents having sexual intercourse was relevant to explain her "advanced" sexual knowledge. (Pet. ¶¶ 37–39; Grant Br. at 14–28; Grant Reply Br. at 3–6.)

Relevant evidence "means 'evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *People v. Davis*, 43 N.Y.2d 17, 27, 400 N.Y.S.2d 735, 740, 371 N.E.2d 456 (1977) (quoting Uniform Rules of Evidence Rule 401), *cert. denied*, 435 U.S. 998, 98 S.Ct. 1653, 56 L.Ed.2d 88; 438 U.S. 914, 98 S.Ct. 3143, 57 L.Ed.2d 1160 (1978); *accord, e.g.,* Fed.R.Evid. 401. However, "'even if the evidence is proximately relevant, it may be rejected if its probative value is outweighed by the danger that its admission would prolong the trial to an unreasonable extent without any corresponding advantage; or would confuse the main issue and mislead the jury; or unfairly surprise a party; or create substantial danger of undue prejudice to one of the parties.'" *People v. Davis*, 43 N.Y.2d at 27, 400 N.Y.S.2d at 740, 371 N.E.2d 456, *see also, e.g.,* Fed.R.Evid. 403.

In this case, Grant's attorney failed to proffer any evidence that ejaculation was involved in Dominique's prior rape. (*See* discussion at pages 217–18 above.) The only evidence before the trial court on the prior rape was that it involved anal and slight vaginal penetration. (*See* page 29 above.) Thus, there was no evidence that during the prior rape Dominique touched a penis or observed ejaculation. Indeed, the prosecutor represented, without contradiction by Grant's counsel, that the earlier rape did not involve ejaculation. (Tr. 462–63, quoted at page 29 above.) Given the somewhat graphic sexual depictions on television and in movies, this Court might be willing to consider that ten-year-old girls could know what a penis and an erection look like, but this Court is not willing to assume that ten-year-old girls know how to describe ejaculation. (*See also* Grant Br. at 22.) Since Grant did not show that the prior rape provided Dominique with knowledge of how a penis feels or ejaculation, and since the trial court was concerned that evidence of a prior rape would make the jury less likely to credit Dominique's testimony, the Court cannot say that the trial court's ruling that the

prior rape was more prejudicial than probative was constitutional error. *See, e.g., People v. Walker*, 223 A.D.2d 414, 415, 636 N.Y.S.2d 765, 766 (1st Dep't) ("The trial court appropriately exercised its discretion in precluding cross-examination of the complainant regarding alleged prior sexual abuse, as defendant made no showing that the circumstances of these unrelated allegations bore a significant probative relation to the instant charges ...."), *appeal denied*, 88 N.Y.2d 887, 645 N.Y.S.2d 462, 668 N.E.2d 433 (1996); *People v. Charlton*, 192 A.D.2d 757, 759, 596 N.Y.S.2d 210, 212–13 (3d Dep't) (no error in excluding victim's prior abuse by another man where trial court held two hearings to determine whether the evidence should be allowed and found that the testimony would not "cast [ ] substantial doubt on the validity of the charges made by the victim ...."), *appeal denied*, 81 N.Y.2d 1071, 601 N.Y.S.2d 590, 619 N.E.2d 668 (1993); *People v. Gagnon*, 150 A.D.2d 918, 919, 541 N.Y.S.2d 625, 627 (3d Dep't) ("Following an offer of proof in which defense counsel elicited several purported instances of previous sexual contact between the victim and her uncle, [the trial] Court denied the application [to present the evidence of prior abuse at trial]. The court determined that since the described acts did not related to the specific events charged in the indictment, the evidence was irrelevant. We agree, and find the exclusion well within the court's discretion."), *aff'd*, 75 N.Y.2d 736, 551 N.Y.S.2d 195, 550 N.E.2d 448 (1989); *People v. Boyd*, 122 A.D.2d 273, 275, 505 N.Y.S.2d 185, 187 (2d Dep't 1986) ("The defendant's contention that the trial court erred in excluding evidence with respect to a prior unrelated rape of the complainant is without merit. The proffered evidence had no probative value ... and its exclusion was consistent with the legislative purposes of barring harassment of victims of sexual crimes concerning irrelevant issues and of safeguarding the jury from confusing and prejudicial matters which have no proper bearing on the issue of the guilt or innocence of the accused....").

■ Grant also argues that the trial court erred in not admitting evidence that Dominique surreptitiously watched her parents engage in intercourse. (Pet. ¶ 39; Grant Br. at 14, 15–16; Grant Reply Br. at 5–6.) This ruling did not constitutionally exceed the trial courts discretion for the same reason the prior rape evidence did not: Grant did not proffer any evidence that the sexual acts Dominique allegedly saw her parents engage in involved visible ejaculation. (Tr. 560–64.) *See* cases cited at pages 29–31 above. The trial court's decision not to admit this evidence therefore was not constitutional error.

Accordingly, Grant's habeas corpus petition on the grounds that the trial court erroneously prevented him from showing that Dominique had been previously raped by another man, and watched her parents engaged in sexual intercourse, should be denied.

III. *SINCE GRANT COULD NOT PROVE THAT DOMINIQUE'S OTHER MOLESTATION ALLEGATIONS WERE FALSE, AND TWO ALLEGATIONS WERE MADE AFTER THE GRANT INCIDENT, THEY WERE IRRELEVANT TO DOMINIQUE'S CREDIBILITY AND SEXUAL KNOWLEDGE, AND EXCLUDING THIS EVIDENCE WAS NOT CONSTITUTIONAL ERROR*

Grant argues that Dominique's prior accusations that a teacher put his hand under her dress and molested her, Grant forced her to watch LaVita and Dashawn engage in sexual intercourse, and her foster brother raped her, should have been admitted to show that Dominique possessed sexual knowledge, to impeach Dominique's credibility, and to show that she had a motive to fabricate because she needed attention and wanted to live with her natural father. (Tr. 439–401; Pet.

¶¶ 39, 40; Grant Br. at 28–33; Grant Reply Br. at 5–9.)

The trial court held that evidence of Dominique's other claims were proscribed under New York's rape shield law. (Tr. 492–502.) New York state decisions have held that prior alleged rape complaints by the victim *do not come within* the proscriptive scope of New York's rape shield statute, but that a trial court still may exercise its discretion as to whether to disallow such evidence where there is insufficient basis to believe the prior claim was false. *See, e.g., People v. Mandel,* 48 N.Y.2d 952, 953–54, 425 N.Y.S.2d 63, 64, 401 N.E.2d 185 (1979), *cert. denied & appeal dismissed,* 446 U.S. 949, 100 S.Ct. 2913, 64 L.Ed.2d 805 (1980); *People v. Benn,* 213 A.D.2d 489, 489, 623 N.Y.S.2d 634, 635 (2d Dep't) ("prior alleged sexual assault complaints do not fall within the proscriptive scope of CPL 60.42"), *appeal denied,* 85 N.Y.2d 969, 629 N.Y.S.2d 729, 653 N.E.2d 625 (1995); *People v. Passenger,* 175 A.D.2d 944, 946, 572 N.Y.S.2d 972, 974 (3d Dep't 1991); *People v. Hamel,* 174 A.D.2d 837, 837, 571 N.Y.S.2d 138, 139 (3d Dep't 1991); *People v. Harris,* 151 A.D.2d 981, 981, 542 N.Y.S.2d 71, 72 (4th Dep't), *appeal denied,* 74 N.Y.2d 810, 546 N.Y.S.2d 568, 545 N.E.2d 882 (1989); *People v. Lippert,* 138 A.D.2d 770, 771, 525 N.Y.S.2d 390, 391 (3d Dep't 1988); *People v. Harris,* 132 A.D.2d 940, 941, 518 N.Y.S.2d 269, 270 (4th Dep't 1987), *appeal denied,* 74 N.Y.2d 810, 546 N.Y.S.2d 568, 545 N.E.2d 882 (1989).

■ The Court can quickly deal with the claim that the other molestation evidence was relevant to show Dominique's sexual knowledge. As with the prior rape, no proffer was made that any of these events involved Dominique observing ejaculation. (*See* discussion at pages 28–31 above.) Without that crucial element, the other molestation evidence, like the prior rape, is not sufficiently relevant as to be constitutionally required to be admitted into evidence.[6]

---

**6.** Grant also argues that "Dominique's very ability to make false allegations of sexual

abuse was relevant to show that she possessed sexual knowledge." (Grant Reply Br. at 5.)

As to the fabrication theory, Grant admitted that there really was no way to prove fabrication without holding mini-trials on each allegation. (Tr. 35, 444–49, 456–60, 470–77.) A habeas court is not an appeals court to review state trial court errors unless they are of constitutional dimension. This Court, therefore, need not decide whether, in exercising discretion, it would have allowed this evidence if it were the trial judge, nor whether the trial judge abused his discretion as a matter of state law in excluding this evidence. The only question is whether the trial court's exclusion ruling was "arbitrary or disproportionate to the purposes" to be served by rape shield policies, so as to constitute constitutional error. *Agard v. Portuondo*, 117 F.3d 696, 702 (2d Cir. 1997), *cert. denied*, — U.S. —, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999). Since Grant had no proof that any of Dominique's other sexual abuse allegations were demonstrably false, on the facts here the Court cannot say that the trial court's exercise of discretion constituted constitutional error. *See, e.g., People v. Gozdalski*, 239 A.D.2d 896, 896, 659 N.Y.S.2d 677, 678 (4th Dep't 1997) ("The court properly exercised its discretion in restricting cross-examination of the victim concerning a prior rape complaint. Defendant failed to establish a basis for the allegation that the prior complaint was false."), *appeal denied*, 90 N.Y.2d 858, 661 N.Y.S.2d 185, 683 N.E.2d 1059 (1997); *People v. Duggan*, 229 A.D.2d 688, 689, 645 N.Y.S.2d 158, 159 (3d Dep't 1996) (court did not abuse its discretion in prohibiting cross-examination of rape victim about alleged prior false accusation of rape where defendant's only offer of proof was an unsworn statement based on inadmissible hearsay, and the "rape allegations ... were never made to the police or reduced to formal charges"), *appeal denied*, 88 N.Y.2d 984, 649 N.Y.S.2d 390, 672 N.E.2d 616 (1996); *People v.*

*Benn*, 213 A.D.2d at 489, 623 N.Y.S.2d at 635 ("Although prior alleged sexual assault complaints do not fall within the proscriptive scope of CPL § 60.42, it is not an improvident exercise of discretion for a trial court to restrict cross-examination on that topic, especially where, as here, the defendant provided no basis for his allegation that the prior complaints were false."); *People v. Passenger*, 175 A.D.2d at 946, 572 N.Y.S.2d at 974 (prior sexual abuse charges by child held inadmissible because "[w]hile proof that the child made prior false complaints might cast substantial doubt on the validity of the charges in this case ..., other than defense counsel's suggestion that the child had a proclivity to make sexual charges, there was no proof that these earlier complaints were false or suggested a pattern of deceit.... [A] trial court may exercise its discretion to restrict cross-examination on this issue where there is no basis for believing that the prior unrelated claims were false.... Here, the sexual abuse accusations ..., which predated the events giving rise to defendant's indictment, were never reduced to formal complaints.... Accordingly, exclusion was proper."); *People v. Hamel*, 174 A.D.2d at 837, 571 N.Y.S.2d at 139 ("Inasmuch as defendant sought to impeach the complainant's credibility ..., without an adequate factual basis for believing that the prior complaint was false ..., we see no abuse of [trial court's] discretion in denying defendant's motion to permit cross-examination of the complainant about a prior incident of attempted rape."); *People v. Lippert*, 138 A.D.2d at 771, 525 N.Y.S.2d at 391 (no abuse of discretion "where, as here, the party seeking to introduce such [other rape] evidence has no basis for believing that the prior complaints were false"); *see also, e.g., Little v. State*, 413 N.E.2d 639, 643 (Ind.Ct. App.1980) ("The focus is the falsity of the

However, the allegation that Dominique was raped by her foster brother occurred after she had already reported Grant's sexual abuse. Thus, the fact that Dominique had sufficient sexual knowledge to allegedly falsely accuse

her foster brother after she had already reported Grant's abuse does not show *independent* sexual knowledge, for her "sexual knowledge" to accuse the foster brother could have come from Grant's earlier abuse of her.

accusations. We believe that evidence of false accusations of similar sexual misconduct is admissible on the issue of the victim's credibility. The allegations, however, must be demonstrably false."); *State v. Bass,* 121 N.C.App. 306, 465 S.E.2d 334, 336 (1996) ("prior accusations of abuse [are] inadmissible ... unless there was evidence that the prior accusations were false.... Here, the proffered evidence fails this balancing test. Defendant here introduced no evidence that the victim's prior accusations were false.").[7]

The trial court did not commit constitutional error in excluding the other abuse allegations.

## CONCLUSION

For the reasons set forth above, I recommend that the Court deny Grant's habeas petition. Because of the paucity of federal case law on this subject, however, I recommend granting him a certificate of appealability.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to my chambers, Honorable John E. Sprizzo, 40 Foley Square, Room 2201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Sprizzo. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

September 10, 1999.

---

**7.** One of the principal cases relied upon by Grant, *United States v. Stamper,* 766 F.Supp. 1396 (W.D.N.C.1991), *aff'd,* No. 91–5334, 959 F.2d 231 (table), 1992 WL 63334 (4th Cir. April 1, 1992), is not to the contrary. (Grant. Br. at 31–32.) In *Stamper,* the district court held that the defendant must be constitutionally permitted to cross-examine the complainant about prior alleged occurrences of sexual abuse, since the "complainant admitted that she had lied about the three prior alleged occurrences of sexual abuse," 766 F.Supp. at 1398, and there were facts "indicative of a contrived scheme of fabrication on the part of the complainant," *id.* at 1402. The district court stated that "[t]o square with the defense theory of a fabrication scheme, there must be proof of the falsity of the prior allegations," and that it was the "substantial proof of falsity" before the court that set Stampur's case apart from other cases. *Id.* at 1403 n. 3. Thus, *Stamper,* unlike Grant, had "produced substantial supporting evidence" of a fabrication scheme. *Id.* at 1404.